No. 103,020

CONNIE BUSSMAN, *Appellant/Cross-appellee*, v. SAFECO
INSURANCE COMPANY OF AMERICA, *Appellee/Cross-appellant*.
(317 P.3d 70)

Opinion filed January 24, 2014.

*Fred J. Spigarelli,* of Spigarelli, Spigarelli & Hayes, of Pittsburg, argued the cause, and *Angela Trimble,* of the same firm, was with him on the briefs for appellant/cross-appellee.

*Paul P. Hasty, Jr.*, of Hasty & Associates, LLC, of Overland Park, argued the cause and was on the briefs for appellee/cross-appellant.

*Derek S. Casey*, of Triplett, Woolf & Garretson, LLC, of Wichita, and *Jacob S. Graybill* and *N. Russell Hazlewood*, of Graybill & Hazlewood LLC, of Wichita, were on the brief for *amicus curiae* The Kansas Association of Justice.

*Timothy J. Finnerty* and *Bradley J. Raple*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Wichita, were on the brief for *amicus curiae* Kansas Association of Defense Counsel.

The opinion of the court was delivered by

JOHNSON, J.: Connie Bussman was driving a vehicle owned by her employer, Community National Bank (CNB), when she was injured in an accident that was caused by an underinsured motorist. Bussman settled with the underinsured tortfeasor for policy limits and then claimed underinsured motorist (UIM) benefits under CNB's commercial insurance package policy that included commercial automobile coverage, which Bussman believed had been issued by Safeco Insurance Company of America (Safeco), the same carrier that insured the underinsured tortfeasor. After Safeco denied Bussman's claim, a jury found that the underinsured motorist was 100 percent at fault for the accident and awarded Bussman damages, including future medical expenses. The district court denied Safeco's posttrial motion for judgment based upon its claim that it did not issue CNB's insurance policy. The district court granted Safeco's motion for credit against the verdict in part but declined to give Safeco credit for future medical expenses. The district court also denied Bussman's motion for attorney fees under K.SA. 40-256 and K.S.A. 40-908.

Bussman appealed and Safeco cross-appealed to the Court of Appeals. The Court of Appeals affirmed the district court's judgment on each of Safeco's claims of error. The Court of Appeals also affirmed the district court's denial of Bussman's request for attorney fees under K.S.A. 40-256 but found that Bussman was entitled to attorney fees under K.S.A. 40-908 in *Bussman v. Safeco Ins. Co. of America*, No. 103,020, 2010 WL 5185785 (Kan. App. 2010) (unpublished opinion).

Safeco petitioned this court for review, arguing that the Court of Appeals erred in holding that (1) Safeco had waived its right to claim that Bussman named the wrong defendant in her lawsuit; (2) Bussman's claim for future medical expenses under CNB's commercial insurance package policy was not duplicative of her workers compensation award; (3) Bussman was entitled to a jury instruction on future medical expenses, (4) Bussman was entitled to attorney fees under K.S.A. 40-908; and (5) Bussman's pretrial request for costs was sufficient to give Safeco notice of her intent to seek attorney fees under K.S.A. 40-908. We granted Safeco's petition and allowed both the Kansas Association of Defense Counsel and The Kansas Association of Justice to file *amicus curiae* briefs. We have jurisdiction pursuant to K.S.A. 60-2101(b).

## FACTUAL AND PROCEDURAL BACKGROUND

On August 1, 2005, while within the scope of her employment and while driving a vehicle owned and insured by her employer, CNB, Bussman was injured in a two-vehicle automobile accident. Carol Barth was driving the other vehicle, which was insured by Safeco.

Bussman settled her claim against Barth by accepting Safeco's tender of Barth's $50,000 liability policy limit. She also filed a workers compensation claim against CNB, and the administrative law judge (ALJ) awarded her temporary total disability and permanent partial disability compensation. The ALJ's award also provided: "Future medical will be considered upon proper application."

Believing that Safeco had also issued CNB's commercial insurance package policy, Bussman made a claim against that company for UIM benefits. When a settlement could not be reached, Bussman filed a lawsuit against Safeco. The pretrial order did not indicate that the identity of the company that issued CNB's UIM policy was a disputed issue.

Prior to the jury trial, Safeco filed a motion for partial summary judgment, arguing that it was entitled to judgment as a matter of law on Bussman's future medical expenses claim because Bussman had been awarded future medical expenses in her workers compensation case. The district court denied the motion based upon

the fact that Bussman had not yet recovered future medical expenses in the workers compensation case.

On the first day of the jury trial, Safeco specifically asserted for the first time that Safeco had not issued CNB's insurance policy and, therefore, Bussman had sued the wrong insurance company. The district court ruled that if the jury rendered a judgment adverse to Safeco, the court would consider this issue after the trial.

During the jury instruction conference, Safeco objected to an instruction informing the jury that it could award Bussman damages for future medical expenses based upon its argument that Bussman had already been awarded future medical expenses in her workers compensation case. Alternatively, Safeco argued that Bussman had presented insufficient evidence upon which a jury could find that there would be any future medical expenses. The district court overruled Safeco's objections to instructing the jury on future medical expenses.

The jury found the underinsured motorist, Barth, 100 percent at fault and awarded Bussman a total of $115,505.96 in damages, including a $20,000 award for future medical expenses. After the trial, Safeco renewed its argument that Safeco had not issued CNB's insurance policy through a motion for judgment as a matter of law. The district court denied the motion, finding that sufficient evidence supported a finding that Safeco issued CNB's policy.

Safeco also filed a motion seeking the application of certain credits against the verdict. It claimed to be entitled to a $51,415.19 credit for workers compensation benefits that were actually paid to Bussman, a $20,000 credit for future medical expenses awarded by the jury which Bussman would be entitled to receive in the workers compensation case, and a $50,000 credit for Safeco's payment to Bussman from the tortfeasor's policy. The district court granted Safeco's motion in part and denied it in part. Specifically, the court allowed a $51,415.19 credit against judgment for the workers compensation benefits Bussman had received, but it denied the other claimed offsets.

The district court denied Bussman's posttrial motion for attorney fees under K.S.A. 40-256, finding that Safeco had not acted in bad faith or without just cause or excuse when it refused to pay the full

amount of Bussman's UIM claim. The district court found that the K.S.A. 40-908 attorney fee claim was not properly before the court because Bussman had failed to provide notice of her intent to seek attorney fees under that statute either in her petition or in the pretrial order. Bussman's motion for reconsideration of the K.S.A. 40-908 attorney fee issue was likewise denied.

Bussman appealed, and Safeco cross-appealed. The Court of Appeals held that Safeco had waived its argument that Bussman's petition named the wrong defendant when it failed to raise the issue in the pretrial order. *Bussman*, 2010 WL 5185785, at *10. The panel rejected Safeco's contention that the jury's future medical expenses award was duplicative of Bussman's workers compensation award and found that Bussman had presented sufficient evidence to instruct the jury on future medical expenses. 2010 WL 5185785, at *12; see K.S.A. 40-284(e)(4). With respect to attorney fees, the panel affirmed the district court's denial of Bussman's motion under K.S.A. 40-256 based upon an absence of bad faith, but it held that the district court should have awarded attorney fees under K.S.A. 40-908 as part of the costs of the action. 2010 WL 5185785, at *14.

Safeco petitioned for our review of the Court of Appeals' decision, listing five issues which we will consolidate and rearrange into the following three issues: (1) the plaintiff's failure to name the correct insurance company as defendant; (2) the propriety of including Bussman's future medical expenses in the final judgment; and (3) the propriety of awarding Bussman attorney fees under K.S.A. 40-908.

## NAMING THE PROPER INSURANCE COMPANY

On the morning of trial, during a conference on pending motions, Safeco's counsel advised the trial court that Bussman's attorney had "sued the wrong insurance company." When the district court asked which insurance company the plaintiff should have sued, Safeco's attorney responded, "American Economy Insurance Company or American State, but I think it's American Economy." Plaintiff's counsel responded that the need to substitute the proper party defendant had not been identified as an issue in the pretrial

order, to which Safeco's attorney responded that the identity of the UIM carrier did not have to be part of the pretrial order because it was an element of the case that Bussman had to prove. When Safeco's attorney presented CNB's policy to the judge, he said that "[t]he issuing company is American States or American Economy. I've forgotten already. American States and American Economy." The judge observed that the policy "[s]ays American Economy here, but then Safeco is at the top of the page as well."

The district court noted that a jury would be arriving shortly to commence the jury trial and the court was just learning of the identity issue for the first time. The trial court declined to continue the trial, but declared that it was not prepared to rule on the orally raised last minute issue without further review. Accordingly, the trial court "reserved and preserved" that particular issue for consideration after the conclusion of the proceedings in the event the jury found in favor of the plaintiff.

After the jury trial, Safeco moved the court for an order entering judgment in its favor because Safeco did not issue CNB's policy. The district court denied Safeco's motion, and the Court of Appeals affirmed, albeit the two courts relied upon different rationales. The district court found that sufficient evidence supported a finding that Safeco issued the policy and therefore did not rule on Bussman's argument that Safeco waived this defense. The Court of Appeals, on the other hand, found that Safeco waived this issue by not raising it in the pretrial order and therefore did not rule on the merits. *Bussman*, 2010 WL 5185785, at *9-10.

*Standards of Review/Rules of Construction*

Safeco challenges the district court's ruling on Safeco's motion for judgment as a matter of law. A judgment as a matter of law was formerly referred to as a directed verdict, see K.S.A. 60-250, and our standard of review is the same standard we previously used for a directed verdict. See *Smith v. Kansas Gas Service Co.*, 285 Kan. 33, 40, 169 P.3d 1052 (2007).

" ' " 'When ruling on a motion for directed verdict, the trial court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought. Where reasonable minds

could reach different conclusions based on the evidence, the motion must be denied. A similar analysis must be applied by an appellate court when reviewing the grant or denial of a motion for directed verdict.' " [Citations omitted.]' *Smith v. Kansas Gas Service Co.*, 285 Kan. 33, 40, 169 P.3d 1052 (2007).

"The inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); see, *e.g., Smith*, 285 Kan. at 40 ('In other words, a motion for judgment as a matter of law must be denied when evidence exists upon which a jury could properly find a verdict for the nonmoving party.')." *City of Neodesha v. BP Corporation*, 295 Kan. 298, 319-20, 287 P.3d 214 (2012).

To the extent that we must interpret CNB's insurance policy, we are presented with a question of law over which appellate courts have unlimited review. See *National Bank of Andover v. Kansas Bankers Surety Co.*, 290 Kan. 247, 257, 225 P.3d 707 (2010). We utilize the following rules of construction when interpreting an insurance policy:

"In construing an insurance policy, a court should consider the instrument as a whole and endeavor to ascertain the intention of the parties from the language used, taking into account the situation of the parties, the nature of the subject matter, and the purpose to be accomplished. *O'Bryan v. Columbia Ins. Group*, 274 Kan. 572, 575, 56 P.3d 789 (2002). Insurance policy language is tested by what a reasonably prudent insured would understand the language to mean, not by what the insurer intended the language to mean. *Liggatt v. Employers Mut. Casualty Co.*, 273 Kan. 915, Syl. ¶ 3, 46 P.3d 1120 (2002)." *Iron Horse Auto, Inc. v. Lititz Mut. Ins.*, 283 Kan. 834, 839, 156 P.3d 1221 (2007).

And, to the extent that the insurance policy is ambiguous, the ambiguity is construed against the insurance company. *Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co.*, 281 Kan. 844, 858, 137 P.3d 486 (2006). In *Lee Builders*, we reiterated:

" 'Where an insurer prepares its own contracts, it has a duty to make the meaning clear, and if it fails to do so, the insurer and not the insured must suffer. If the terms of a policy of insurance are ambiguous or obscure or susceptible of more than one construction, the construction most favorable to the insured must prevail.' " 281 Kan. at 858 (quoting *Sturdy v. Allied Mutual Ins. Co.*, 203 Kan. 783, 792, 457 P.2d 34 [1969]).

*Analysis*

As noted, the Court of Appeals held that Safeco was not entitled to judgment as a matter of law because it had waived the carrier identity issue by not raising it in the pretrial order. *Bussman*, 2010 WL 5185785, at *9-10. The panel noted that the pretrial order listed only two issues of fact for the jury to decide—the comparative fault of the two drivers and the extent of damages that were caused by the collision—and two questions of law remaining for the trial court to decide—whether Safeco was entitled to an offset for Bussman's workers compensation award and whether evidence of Bussman's workers compensation award was admissible at trial. 2010 WL 5185785, at *10.

In other words, the question of whether Safeco, rather than one of its subsidiary companies, issued CNB's policy was not identified in the pretrial order as an outstanding issue. The panel deemed that omission to be critical because of the important purpose that a pretrial order performs, which we identified in *McCain Foods USA, Inc. v. Central Processors, Inc.*, 275 Kan. 1, Syl. ¶ 8, 61 P.3d 68 (2002), to be "to eliminate the element of surprise from trials and to simplify the issues and procedure by full disclosure to all parties of the anticipated evidence and factual and legal issues and to consider '[s]uch other matters as may aid in the disposition of the action. K.S.A. 2001 Supp. 60-216(c)(7)." Generally, a trial court should not entertain an issue or claim that is omitted from the pretrial order. Rather, the pretrial order controls the course of the action unless modified to prevent manifest injustice. *McCain*, 275 Kan. 1, Syl. ¶ 8; see K.S.A. 60-216(a), (c), and (e).

The panel held that the carrier identity issue was a matter that should have been addressed in the pretrial order and that "Safeco waited too long to spring its trap." 2010 WL 5185785, at *10. We agree. But given that the district court ruled on the merits rather than on procedural grounds, and Safeco petitioned for review on that basis, we will consider that decision as well.

In its memorandum opinion addressing Safeco's motion for judgment as a matter of law, the district court held that sufficient evidence supported a finding that Safeco issued CNB's policy:

"While it may be somewhat unclear as to exactly what the connection is between Safeco Insurance, American States Insurance Company and American Economy Insurance Company, the Defendant Safeco has [its] corporate 'fingerprints' all over the policy which lies at the heart of this issue. Page 129-3 of the policy[,] as provided to the Court by Mr. Spigarelli, bears the policy number 02-CC-041778-9. On that same page at the top is the name 'Safeco Insurance'. At the bottom of that page are the words 'Thank you for placing your business with Safeco'. It also has the name and address of Community National Bank on that same page. Page 129-5 of the policy has the names of Safeco Insurance, American States Insurance Company and American Economy Insurance Company at the bottom of that sheet. Page 129-6 of the policy again has the company name Safeco Insurance prominently emblazoned across the bottom of the page. Page 129-7 of the policy shows the policy number as cited above and shows that the 'named insured' is Community National Bank, which was Ms. Bussman's employer. There are numerous other pages of the policy that reflect the company name of Safeco Insurance.

"It is also significant that page 129-61 of this policy reflects that the named insured is Community National Bank and that one of the insured driver's [*sic*] under that policy was the Plaintiff Connie Bussman. The plaintiff also has attached to its reply attachments V, VI and VII, which show that Safeco Insurance Company, American Economy Insurance Company and American States Insurance Company all have the same President, Secretary, General Administrative contact person and the same address. That address, by the way, for all three companies is located at 'Safeco Plaza' in Seattle. These companies may be separate entities, but they also are obviously intertwined, and as Mr. Spigarelli states, indistinguishable.

"Finally, Mr. Spigarelli makes a persuasive point when he refers to the Offer of Judgment as attached to his response as Attachment II. . . . That 'Offer' was made by Mr. Hasty on behalf of the 'defendant'. The only 'defendant' on June 18, 2008 when the offer was made was Safeco Insurance Company. Why, Mr. Spigarelli asks, would such an offer have been made at that time by Safeco if it felt it had no liability as the insured? While the Court is not finding or suggesting that, as the Plaintiff suggests, the Defendant 'misled' the Plaintiff by making this offer, the point is very well taken. Why indeed would Safeco offer any sum at all if it did not consider itself as potentially having some exposure as the UIM carrier?

"When viewing the policy in [its] entirety, the Court agrees with Mr. Spigarelli that perhaps Safeco Insurance Company was one of three entities that could have been considered an appropriate defendant in this case. Clearly, it appears to the Court that Safeco should not be excluded as a possible Defendant for the reasons as set out above. It therefore appears that sufficient evidence was introduced at trial, in the form of the aforementioned policy, for the Court to find that the Plaintiff filed suit against the company which issued the policy under which relief is sought and that she had a valid claim against this named Defendant. Consequently, the Defendant's motion for judgment is denied."

Safeco challenges the district court's reliance upon its offer of judgment as evidence that it issued the UIM policy. Safeco points to the explicit language of K.S.A. 60-2002(b), which states that "evidence [of an offer to allow judgment] is not admissible except in a proceeding to determine costs," to support its contention that its offer to settle the lawsuit should not have been used to establish its liability. Safeco's statutory point is well taken. Moreover, if Safeco was related to the company that it claims issued the policy, then there may well have been an economic reason for Safeco to pursue a settlement, even though it did not issue the policy.

Nevertheless, even without considering the offer of judgment, there is sufficient evidence to support the district court's finding that the policy appeared to be issued by the defendant. Even though the policy language did not include the full name of Safeco Insurance Company of America, we agree with the district court's assessment that the ubiquitous "Safeco Insurance" logo resulted in the company having "[its] corporate 'fingerprints' all over the policy."

Safeco counters that the "Safeco Insurance" logo is not necessarily synonymous with Safeco Insurance Company of America, but rather the logo encompasses all related entities. While that declaration may be meaningful for an attorney or an insurance professional, we must view the policy from the standpoint of the insured. After all, it was the issuing insurance company (or its parent company, Safeco) that chose to include the eponymous logo throughout the policy. Accordingly, Safeco must bear the consequences of any ambiguity that arises from its having obscured the identity of the issuing company. See *Lee Builders*, 281 Kan. at 858 (ambiguity must be construed in favor of insured, against insurer).

Safeco contends that the policy renewal declarations page, the specific coverage part declarations page, and the business auto coverage form identify the correct party defendant in this case to be American States Insurance Company. Safeco references two declaration pages—the policy renewal declarations page and the business auto coverage part declarations page. The policy renewal declarations page states:

"IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE COMPANIES INDICATED ON THE SPECIFIC COVERAGE PART DECLARATIONS AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY."

Interestingly, although Safeco's logo and the name of American Economy Insurance Company are printed on this page, American States Insurance Company's name is nowhere to be found on the page.

Safeco then directs our attention to the business auto coverage part declarations page. To find the applicable company for each of the listed automobiles, one has to observe the column in front of each covered automobile that is labeled "Co*," and note the presence of the entry "01." Then, following the schedule of covered autos, there is the following statement, preceded by an asterisk that presumably applies to the "Co*" column, that states: "*INSURANCE COMPANY WITH RESPECT TO EACH AUTO IS DESIGNATED AS FOLLOWS: 01 AMERICAN STATES INSURANCE COMPANY." In other words, Safeco contends that the prominent logo, "Safeco Insurance," is trumped by an asterisked footnote.

Finally, Safeco directs us to the actual policy of insurance, specifically the business auto coverage form, which provides: "Throughout this policy, the words 'you' and 'your' refer to the Named Insured *shown in the Declarations*. The words 'we', 'us' and 'our' refer to the Company *providing this insurance*." (Emphasis added.) Here again, the policy language is ambiguous by sending the reader to the declarations page to find the identity of the named insured, but it does not send the reader on the same journey to find the company providing the insurance. The policy does not say that the "Company providing this insurance" is "shown in the Declarations." To the contrary, that portion of the policy contains the "Safeco Insurance" logo at the top of the page and at the bottom of the page it declares "Safeco and the Safeco logo are registered trademarks of Safeco Corporation." Again, the name of American States Insurance Company, which Safeco now claims is the company providing this insurance, is not mentioned in this part of the policy.

An insured should not have to be a cryptographer in order to discover the identity of the company issuing the insured's policy of insurance. Noteworthy in the record before us is the inability of Safeco's own attorney to readily identify the company that issued the policy when directly asked that question by the trial judge. Then, when the policy was presented to the court, the judge read the policy as indicating that American Economy Insurance Company was the issuer, rather than American States Insurance Company.

In addition to the policy itself, the district court also found that the three potential defendants in this case—Safeco Insurance Company of America, American Economy Insurance Company, and American States Insurance Company—were "obviously intertwined" because they all had the same President, Secretary, general administrative contact person, and the same address at "Safeco Plaza." This finding is supported by Kansas Insurance Department records contained in the record on appeal. Further, we note that Safeco does not challenge the district court's consideration of this parol evidence in reaching its determination that Safeco had its "corporate fingerprints" all over this policy.

In sum, construing all ambiguities in the insurance policy in favor of the insured and against the insurance company, we affirm the district court's denial of Safeco's posttrial motion for judgment as a matter of law.

## FUTURE MEDICAL EXPENSES

Safeco argues that the district court erred in allowing Bussman to seek future medical expenses as underinsured motorist benefits in this case for at least two reasons. On one hand, Safeco contends that the evidence was insufficient to support such an award because both a doctor and Bussman testified that she had refused to submit to one of the recommended surgeries. We note that the amount the jury awarded for future medical expense does not appear to include the estimated cost of the rejected surgery. Nevertheless, we need not discuss this issue in detail, given our holding on Safeco's more fundamental argument that the payment of future medical expenses as part of the UIM damages would duplicate her

right to receive those expenses in her workers compensation case. We agree with that contention; Bussman's entitlement to receive future medical expenses as part of her workers compensation claim precludes the recovery of those damages under the UIM coverage in CNB's insurance policy.

*Standard of Review*

The Court of Appeals noted that Safeco had attacked future medical expenses on three fronts. First, it filed a motion for partial summary judgment. Then, it objected to the inclusion of that class of damages in the jury instructions and verdict form. Finally, after the jury awarded Bussman part of her claimed future medical expenses, Safeco asked the district court to reduce the judgment by the amount of the awarded future medical expenses. *Bussman v. Safeco Ins. Co. of America*, No. 103,020, 2010 WL 5185785, at *10-14 (Kan. App. 2010) (unpublished opinion). Because Safeco only provided the Court of Appeals with the summary judgment standard of review, the Court of Appeals limited its review of Safeco's future medical expense argument on the basis of a summary judgment denial. See Supreme Court Rule 6.02(a)(5) (2013 Kan. Ct. R. Annot. 39) (each issue in appellant's brief "must begin with citation to the appropriate standard of appellate review"). On review, Safeco contends that we can review the district court's denial of its motion for credit against the verdict because that issue was presented to, but not decided by, the Court of Appeals. See Supreme Court Rule 8.03(a)(4)(C) (2013 Kan. Ct. R. Annot. 74-75) (providing for review in civil case of "additional issues decided by the district court which were presented to, but not decided by, the Court of Appeals").

We discern that regardless of the manner in which Safeco states the issue, the question of whether the UIM carrier will owe Bussman the $20,000 jury award for future medical expenses turns on our interpretation of Safeco's policy limitations, as constrained by our interpretation of the statutory provisions of K.S.A. 40-284(e)(4). We utilize an unlimited review to perform that task. See *Tyler v. Employers Mut. Cas. Co.*, 274 Kan. 227, 237, 49 P.3d 511 (2002).

*Analysis*

K.S.A. 40-284 is the section of the Kansas Insurance Code that requires all Kansas automobile liability insurance policies to include uninsured and underinsured motorist coverage. In *Fisher v. State Farm Mut. Auto. Ins. Co.*, 264 Kan. 111, 118-19, 955 P.2d 622 (1998), we noted that K.S.A. 40-284 is remedial in nature and should be liberally construed. But we also recognized that "K.S.A. 40-284(e)(4) provides that any insurer may exclude or limit coverage to the extent that workers compensation benefits apply." 264 Kan. at 119. Specifically, K.S.A. 40-284(e) provides, in relevant part: "Any insurer may provide for the exclusion or limitation of [UIM] coverage: . . . (4) to the extent that workers' compensation benefits apply."

The policy issued to CNB contained such a limitation, specifically providing:

"We will not make a duplicate payment under this Coverage for any element of 'loss' for which payment has been made by or for anyone who is legally responsible.

"We will not pay for any element of 'loss' if the person is entitled to receive payment for the same element of 'loss' under any workers' compensation, disability benefits or similar law or personal injury protection coverage."

The first paragraph speaks to duplicative payments, while the second paragraph addresses, *inter alia*, the applicability of workers compensation benefits. In Bussman's workers compensation case, the ALJ's award provided: "Future medical will be considered upon proper application." Facially, that declaration supports the language of the second paragraph above by affirming that Bussman was entitled to receive payment for future medical expenses as an element of "loss" under her workers compensation claim.

In rejecting Safeco's motion for partial summary judgment, the district court determined that no disputed material fact existed to preclude partial summary judgment, but rather Safeco was simply not legally entitled to judgment. The district court explained:

"Clearly the Plaintiff/Claimant can seek to recover her future medical (if any) in the worker's compensation case. K.S.A. 44-510k allows for this and provides a mechanism by which to do so. The administrative law judge in the worker's compensation case held that the Claimant had the right to ask that future medical be

considered in the future if 'proper application' is made. She certainly may do so in that case if she wants to in the future. However, as suggested by the Plaintiff, there is nothing in the statute (nor apparently in any other as no such authority has been provided to the Court's satisfaction) that says that a claimant <u>must</u> pursue the future medical in the worker's compensation court only, and that she may not attempt to do so in the civil case."

While we may agree with the district court's observation that there is no statutory provision that explicitly says a claimant must pursue future medical expenses only in the workers compensation forum, the combined effect of K.S.A. 40-284(e)(4) and CNB's insurance policy's UIM coverage provisions dictate that result. The civil case in this instance is a first-party claim for insurance benefits, *i.e.*, a contract action. The "loss" Bussman can pursue in the civil case is governed by the insurance contract, which specifically says that Bussman is not entitled to receive UIM benefits for any element of her loss for which she is entitled to receive payment through her workers compensation claim. The Kansas Insurance Code, K.S.A. 40-284(e)(4), specifically permits such a limitation. The workers compensation award specifically referenced Bussman's entitlement to future medical expenses. Ergo, while Bussman may not be required to pursue her future medical expenses claim in the workers compensation forum, she is precluded from pursuing a claim for that element of her loss in this civil case.

Granted, the *Tyler* opinion, to which the district court referred, contains some sweeping invalidations of UIM policy limitations, notwithstanding the narrow issue presented in that case. *Tyler* opined that it needed to void certain insurance policy provisions in order to carry out the remedial objectives of K.S.A. 40-284. 274 Kan. at 238. The *Tyler* court declared that, under its view of public policy, "[a]n insurer may exclude or limit its UM/UIM coverage only to the extent that duplicative workers compensation payments have been awarded." 274 Kan. at 238. Interestingly, in *O'Bryan v. Columbia Ins. Group*, 274 Kan. 572, 575, 56 P.3d 789 (2002), filed about 3 months later, this court chastised the Court of Appeals for abandoning "the rules regarding the construction of insurance policies" in order to make "a public policy decision," reasoning that "the declaration of public policy is primarily a legislative function."

But we need not analyze whether the broad policy declarations in *Tyler* represent dicta. See *Law v. Law Company Building Assocs.*, 295 Kan. 551, 564, 289 P.3d 1066 (2012) (quoting *Medford v. Board of Trustees of Park College*, 162 Kan. 169, 173, 175 P.2d 95 [1946]) (" 'Nobody is bound by dictum . . . , "not even . . . the court itself . . . ." ' "). In *Tyler*, the ALJ's workers compensation award that originally stated that future medical compensation would be considered upon proper application was purposefully amended to specifically reflect that the claimant (Tyler) was *not* awarded future medical benefits. Accordingly, by administrative order in *Tyler*, there were no duplicative workers compensation payments awarded for future medical expenses and the UIM policy exclusion for such duplicative payments was not applicable. Relating that circumstance to the words of the UIM coverage limitation in this case, Tyler was, by the ALJ's order, not entitled to receive payment for future medical expenses as an element of his loss under workers compensation, *i.e.*, the policy exclusion was not applicable.

In short, we deem *Tyler* to be factually distinguishable from the instant case and not binding on the issue before us. Moreover, we disagree with the Court of Appeals' suggestion that a claimant is not "awarded" workers compensation benefits until the money is actually collected. As the policy limitation recites, it is the entitlement to be paid an element of loss under workers compensation that makes "workers' compensation benefits apply" within the meaning of K.S.A. 40-284(e)(4).

Moreover, the declaration that K.S.A. 40-284(e)(4) is to be liberally construed, the notion upon which *Tyler* relied and the Court of Appeals in this case parroted, does not answer the question of why a claimant should be able to choose whether to collect future medical expenses from the UIM insurance carrier as opposed to the workers compensation insurer. Indeed, the Workers Compensation Act specifically says that *it* is to be liberally construed to bring employees within its provisions. See K.S.A. 2005 Supp. 44-501(g) ("It is the intent of the legislature that the workers compensation act shall be liberally construed for the purpose of bring-

ing employers and employees within the provisions of the act to provide the protections of the workers compensation act to both.").

Where dueling principles of liberal construction exist, how do we determine which is controlling, other than by applying plain statutory language? Here, the plain language of K.S.A. 40-284(e)(4) says that a UIM policy can exclude coverage "to the extent that workers' compensation benefits apply." It does not say that the exclusion is limited to the extent that workers compensation benefits have been paid, have been collected, or have been awarded. As evidenced by the ALJ's order, workers compensation benefits obviously apply to Bussman's future medical expenses, which allows Safeco to exclude those benefits from the UIM coverage. Moreover, as noted, Safeco's policy excludes Bussman's future medical expenses because that is an element of her loss for which she is entitled to payment under workers compensation. That should be the end of the analysis. If the legislature wants to make the public policy of this state to be something different than its plain language would indicate, it will need to tell us so.

Accordingly, we hold that the district court erred in not granting Safeco partial summary judgment on the issue of future medical expenses and, correspondingly, it erred in refusing to deduct the $20,000 jury award of future medical expenses from the judgment. We reverse and remand for that correction of the amount of the judgment.

## K.S.A. 40-908 ATTORNEY FEES

Safeco makes a two-tier challenge to the Court of Appeals' holding that Bussman could seek attorney fees under K.S.A. 40-908. That statute provides, in relevant part:

"That in all actions now pending, or hereafter commenced in which judgment is rendered against any insurance company on any policy given to insure any property in this state against loss by fire, tornado, lightning or hail, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action including proceeding upon appeal to be recovered and collected as a part of the costs . . . ." K.S.A. 40-908.

Procedurally, Safeco argues that the Court of Appeals erred in overruling the district court's finding that Bussman had not pre-

served her claim for K.S.A. 40-908 attorney fees because she failed to include it in her petition or in the pretrial order. Safeco asks us to reject the panel's interpretation that simply making a claim for "costs" includes a claim for K.S.A. 40-908 attorney fees. We decline that request.

Substantively, Safeco argues that Bussman's status as a personal injury plaintiff precludes her claim for attorney fees under K.S.A. 40-908 because that statute only applies to actions involving property damage claims. Honoring the principle of stare decisis and applying a plain language construction to K.S.A. 40-908, we affirm the Court of Appeals majority's application of the statute in this case, leaving it to the legislature to modify the statute if it did not intend an illogical and unreasonable result. See *Saylor v. Westar Energy, Inc.*, 292 Kan. 610, 618, 256 P.3d 828 (2011) (legislature has authority to intentionally and knowingly enact statutory provisions that may lead to unreasonable results).

## Standard of Review

Whether the district court erred in failing to award attorney fees under a particular statute is a question of law over which this court has unlimited review. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998); see *Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co.*, 281 Kan. 844, 859, 137 P.3d 486 (2006).

### Notice of the K.S.A. 40-908 Attorney Fee Claim

Safeco contends that because Bussman did not explicitly seek attorney fees under K.S.A. 40-908 in her petition and did not identify in the pretrial order that K.S.A. 40-908 attorney fees would be an issue at trial, the district court properly declined to consider Bussman's claim for attorney fees under that statute. Prior to the jury trial, Bussman's only explicit reference to a statutory basis for her attorney fee claim was K.S.A. 40-256. The pretrial order stated: "Plaintiff makes additional claims for attorney fees pursuant to K.S.A. 40-256, plus court costs incurred by Plaintiff that are reimbursable by statute."

In refusing to award attorney fees under K.S.A. 40-908, the district court held that "due to the Plaintiff's failure to assert this

specific claim under this particular statute [K.S.A. 40-908], while at the same time making a proper assertion for similar relief under a completely different statute [K.S.A. 40-256], this renders the post judgment claim under K.S.A. 40-908 as not being one that is properly before the Court." Bussman filed a motion for reconsideration of the K.S.A. 40-908 attorney fee issue. After noting that the "Court ha[d] spent quite a bit of time mulling over this particular issue, and quite frankly, ha[d] gone back and forth on how it should rule," the district court denied plaintiff's motion for reconsideration, finding:

"In the absence of any case or statutory law directly on point that says that the K.S.A. 40-908 claim for attorney's fees may be properly brought up and asserted for the first time in a case pursuant to a post trial motion, the Court is not persuaded to change or modify its prior decision regarding this issue."

The Court of Appeals disagreed with the district court's assessment of the necessity for a plaintiff to explicitly raise the issue of K.S.A. 40-908 attorney fees. The panel opined that because the law treats attorney fees under K.S.A. 40-908 as part of the costs of the case, a plaintiff is not required to "file a specific pleading requesting attorney fees or make a specific request for such in any pretrial order before the court can make such an award if there is a claim for costs." 2010 WL 5185785, at *4.

We begin by addressing Safeco's contention that the existence of a good-faith legal dispute regarding the amount of Bussman's loss should preclude her posttrial attorney fee claim under K.S.A. 40-908. While an insurer's good faith in denying a claim is directly relevant to an attorney fee claim under K.S.A. 40-256, this court has rejected the argument that we should "eliminate the allowance of fees for the policyholder [under K.S.A. 40-908] when the insurer contests claims in good faith." *State Farm Fire & Cas. Co. v. Liggett*, 236 Kan. 120, 128, 689 P.2d 1187 (1984). The *Liggett* court refused to "write into the statute [K.S.A. 40-908] language which is not there." 236 Kan. at 128. That reasoning remains valid and compelling today; Safeco's good faith in contesting Bussman's UIM claim does not affect the assessment of attorney fees under K.S.A. 40-908.

Turning to the language that does appear in K.S.A. 40-908, we note, as the Court of Appeals pointed out, that it specifically provides that "the court . . . shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action including proceeding upon appeal to be recovered and collected *as a part of the costs* . . . ." (Emphasis added.) Furthermore, we have generally held that the Kansas statutes authorizing court costs and fees "now treat attorney fees as an element of costs to be awarded to the prevailing party." *Snodgrass v. State Farm Mut. Auto Ins. Co.*, 246 Kan. 371, 377, 789 P.2d 211 (1990); see also *Legislative Coordinating Council v. Stanley*, 264 Kan. 690, 703, 957 P.2d 379 (1998) ("Attorney fees may be chargeable as costs where specific statutory provisions allow recovery.").

Moreover, in *Snodgrass*, this court clarified that a K.S.A. 40-256 motion or request for attorney fees alleged in the petition is not part of the merits of the underlying action for purposes of appeal because "[a]ttorney fees are not part of the compensation for a plaintiff's injury." 246 Kan. at 373-74. Safeco seductively argues that "*Snodgrass* simply stands for the proposition that a decision on the merits is appealable even if there are outstanding issues relative to the award of attorney fees." Nevertheless, as noted in *Snodgrass*, K.S.A. 60-2001(d) provides that " '[o]ther fees and expenses' to be assessed as additional court costs shall be approved by the court unless specifically fixed by statute." 246 Kan. at 380. K.S.A. 60-2001(d) specifically enumerates "attorney fees" as other fees, and under K.S.A. 60-2002(a), "costs shall be allowed to the party in whose favor judgment is rendered" unless a statute or a judge's order provides otherwise. In K.S.A. 60-2003(8), our legislature stated that "[s]uch other charges as are by statute authorized to be taxed as costs" may be included in the taxation of costs. Here, K.S.A. 40-908 specifically provides for attorney fees to be collected as part of the costs, so that it fits nicely into the *Snodgrass* declaration that attorney fees are an element of costs to be awarded to the prevailing party. 246 Kan. at 377. Accordingly, when Bussman prayed for costs, she was effectively requesting attorney fees under K.S.A. 40-908.

As Safeco points out, however, the Kansas statutes authorizing court costs and fees do not explicitly answer the notice question. Safeco argues that because Bussman did not assert her claim for attorney fees under K.S.A. 40-908 at the pretrial conference, the district court properly denied Bussman's posttrial request. Two Court of Appeals opinions have discussed similar notice issues, albeit reaching different conclusions.

In *Cohen v. Travelers Property Cas. Ins. Co.*, No. 94,928, 2006 WL 2043308 (Kan. App. 2006) (unpublished opinion), the Court of Appeals found that the plaintiffs were entitled to attorney fees under K.S.A. 40-908 even though the plaintiffs did not request the fees prior to the district court's decision on the parties' summary judgment motions. *Cohen* reasoned that an insurance company's notice argument was negated by this court's ruling in *Liggett*, which held that " '[t]he statute, K.S.A. 40-908, is part of the insurance contract.' " *Cohen*, 2006 WL 2043308, at *3 (quoting *Liggett*, 236 Kan. at 129). Further, as *Cohen* noted, K.S.A. 40-908 does not have a notice requirement but rather the statute simply "mandates attorney fees 'where judgment is rendered.' " 2006 WL 2043308, at *3.

In contrast, in *Moore v. Dudley*, 31 Kan. App. 2d 184, 190-91, 64 P.3d 429 (2002), the Court of Appeals found it was not an abuse of discretion for the district court to deny the plaintiff's request for attorney fees under K.S.A. 40-3113a when the request was not raised at the pretrial hearing or in the pretrial order. But that holding runs counter to treatises in this area of the law. Corpus Juris Secundum states that unless the statute or rule specifically requires the plaintiff to mention a claim for attorney fees in a pleading, the general rule is that if the "parties are afforded adequate notice and a full opportunity to be heard, the mere fact that a motion for attorney's fees is made orally during a hearing is not grounds for its denial." 20 C.J.S., Costs § 160, pp. 150-51; see 20 C.J.S., Costs §160, p. 150 n. "Better Practice." Similarly, Rossi on Attorneys' Fees states that although the jurisdictions are not entirely uniform on this timing issue, "the prevailing rule is that an application for attorneys' fees may be made after the entry of judgment." 1 Rossi, Attorneys' Fees § 6:18, p. 6-67 (3d ed. 2013).

Most persuasive, however, is the realization that K.S.A. 40-908 gives all concerned fair and explicit notice that any judgment the court renders against any insurance company on any policy "given to insure any property in this state against loss by fire, tornado, lightning or hail . . . *shall* allow the plaintiff a reasonable sum as an attorney's fee for services in such action including proceeding upon appeal to be recovered and collected as a part of the costs . . . ." (Emphasis added.) Safeco should not have required a pretrial order to understand that, if it lost the lawsuit on CNB's policy, which coincidentally insured property in this state against loss by fire, tornado, lightning, or hail, it was facing a mandatory allowance to the plaintiff of reasonable attorney fees that would be assessed as part of the costs of the action. We affirm the Court of Appeals' reversal of the district court on this point.

### *The Extent of K.S.A. 40-908's Applicability*

The Court of Appeals majority found Bussman could make a claim for attorney fees under K.S.A. 40-908 because all of the elements of the statute were satisfied and the type of policy, not the type of loss, controls the applicability of the statute:

"Bussman was an insured driver under the Bank's policy. The policy issued to the Bank included commercial automobile coverages for losses caused not only by collision, liability, and uninsured and underinsured motorists, but also by fire, lightning, windstorm, and hail. After Safeco failed to accept Bussman's offer to settle or make a counteroffer, Bussman sued Safeco on the Bank's policy. She won a judgment against Safeco based on the Bank's policy. Although Bussman would not be an insured if the vehicle had been damaged or destroyed by fire, lightning, windstorm, or hail, the case-law teaches us *the type of loss does not control.* The application of K.S.A. 40-908 is not dependent on the type of loss suffered. Safeco's argument to the contrary is unpersuasive. The policy coverage controls this issue. Because the Bank's policy was one insuring property as provided in K.S.A. 40-908, Bussman was entitled to attorney fees." *Bussman v. Safeco Ins. Co. of America,* No. 103,020, 2010 WL 5185785, at *6 (Kan. App. 2010) (unpublished opinion).

Safeco does not dispute that CNB's commercial insurance package policy covered CNB's vehicles against damage from the perils listed in K.S.A. 40-908, *i.e.*, fire, tornado, lightning, or hail. Rather, Safeco urges us to adopt Judge G. Gordon Atcheson's theory that

K.S.A. 40-908 is only applicable when an insured is making a claim for property damage and not when the claim involves personal injury. See *Bussman*, 2010 WL 5185785, at *14 (Atcheson, J., concurring and dissenting).

The dissent's appeal to logic is seductive. We agree with the dissent's assertion that it "seems unlikely that the legislature intended K.S.A. 40-908 to apply to nonproperty claims arising under comprehensive liability policies or umbrella policies covering both property losses and other casualties." 2010 WL 5185785, at *17 (Atcheson, J., concurring and dissenting). But the reason the dissent gives for that lack of legislative intent—the absurdity of result—is not compelling because we have precedent rejecting it. In *Hamilton*, this court refused to follow a Tenth Circuit Court of Appeals case, *Millers' Nat. Ins. Co., Chicago, Ill. v. Wichita Flour M. Co.*, 257 F.2d 93, 102-03 (10th Cir. 1958), which had opined that the type of loss and not the type of policy should control the applicability of K.S.A. 40-908 in order to avoid the absurd result of greatly expanding the effect of the statute. *Hamilton*, 263 Kan. at 879-80.

But *amicus*, Kansas Association of Defense Counsel (KADC) does provide a compelling reason to believe that the legislature did not originally intend K.S.A. 40-908 to apply to package policies that provide both property and liability coverage. That reason is that such combination package policies did not exist until some 30 years after K.S.A. 40-908 was enacted in 1927. See Long & Gregg, Property and Liability Insurance Handbook, pp. 765-70 (1965) (discussing development of commercial insurance package policies and noting that most policies did not package property and liability coverage until period from 1957-1963). Early on, property insurance policies that covered the perils listed in K.S.A. 40-908 did not include liability coverage; casualty companies issued those type of policies. See Jerry & Richmond, Understanding Insurance Law, § 13, p. 28 (4th ed. 2007) ("Historically, the business of insurance developed along different *lines* that corresponded to various kinds of risks being covered. . . . Insurance companies tended to specialize in one line."). Accordingly, any claim under any policy covering the four listed perils was necessarily a property claim.

That historical perspective would likewise explain why K.S.A. 40-908 is located in the article of the statutes that addresses the general provisions relating to fire insurance companies. Nevertheless, the Court of Appeals dissent believes that a reference in K.S.A. 40-901(d) suggesting that stock fire insurance companies cannot make " 'insurance against loss by reason of bodily injury to the person' " evidences the legislative intent to restrict K.S.A. 40-908 to property claims, given that it is in the same article of the insurance code. *Bussman*, 2010 WL 5185785, at *16 (Atcheson, J., concurring and dissenting). First, the phrase to which Judge Atcheson refers is specifically qualified by the words "except as herein specified." See K.S.A. 40-901(d). More importantly, however, a similar argument has been previously rejected by another panel of the Court of Appeals. In *Ash v. State Farm Mut. Ins. Co.*, No. 102,222, 2010 WL 4393917, at *5 (Kan. App. 2010) (unpublished opinion), the Court of Appeals rejected the argument that because K.S.A. 40-908 is contained in the article of the insurance code dealing with fire insurance companies, automobile insurance companies are not subject to the statute. *Ash* essentially held that the title of a legislative act does not trump the plain language of a statute contained within that act:

"While the heading or title given an act of the legislature forms no part of the statute, the language of the title cannot be ignored as an aid in determining legislative intent. *Arredondo v. Duckwall Stores, Inc.*, 227 Kan. 842, 846, 610 P.2d 1107 (1980). However, when the language of the statute is plain, the title is unnecessary to a determination of legislative intent. *Hayes Sight & Sound, Inc. v. ONEOK, Inc.*, 281 Kan. 1287, 1328-29, 136 P.3d 428 (2006).

"Although K.S.A. 40-908 is included in an article of the insurance code dealing with fire insurance companies, the language of the statute plainly applies 'against *any* insurance company.' " 2010 WL 4393917, at *5.

In his dissent, Judge Atcheson also makes a logically compelling policy argument as to why it makes sense to differentiate between property claims and personal injury claims when strictly assessing attorney fees for the insurer's failure to settle. He points out that "property tends to be fungible" and have a readily determinable cost of repair or fair market value, whereas personal injury claims "usually include noneconomic losses for pain and suffering, mental

anguish, and the like" which are "notoriously difficult to estimate precisely." *Bussman,* 2010 WL 5185785, at *16-17 (Atcheson, J., concurring and dissenting). In other words, one would intuit that it is less likely that an insurer "low-balling" a property damage claim is doing so because of a genuine belief as to the actual value of the claim rather than an improper motive. Unfortunately, that public policy cannot be reasonably discerned from the language employed by the legislature, and this court is not afforded the luxury of simply saying a statute means what the court thinks it should.

The Court of Appeals dissent faults the panel majority for using an "overly literalistic reading of K.S.A. 40-908" to find a legislative intent not to restrict its application to only property loss claims. 2010 WL 5185785, at *18 (Atcheson, J., concurring and dissenting). But, of course, the panel majority was performing statutory construction exactly as our caselaw directs. First, an appellate court must attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings, *e.g.,* giving "all actions" the ordinary meaning of all lawsuits rather than the uncommon meaning of being only those actions which make property damage claims. See *Padron v. Lopez,* 289 Kan. 1089, 1097, 220 P.3d 345 (2009). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words, *e.g.,* reading "judgment" to mean "judgment on a property claim." See *Double M Constr. v. Kansas Corporation Comm'n,* 288 Kan. 268, 271-72, 202 P.3d 7 (2009). Perhaps most importantly for our purposes here, even where the court believes that the legislature has omitted a vital provision in a statute that precludes the intended result, if that omitted provision cannot be found under any reasonable interpretation of the language actually used, then the remedy lies solely with the legislature. See *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs,* 290 Kan. 446, 464-65, 228 P.3d 403 (2010). It is not our place to add a provision to K.S.A. 40-908 that restricts its application to property damage claims. See *Saylor,* 292 Kan. at 618 (discussing pitfall in using reasonableness

as construction tool when the result is contrary to statute's plain language).

The Court of Appeals dissent also suggests that the "logical implication" of our caselaw would seem to be that statutory attorney fees for a claim under a policy covering both property losses and liability claims "should be governed by whatever aspect of the policy coverage [was] implicated." *Bussman*, 2010 WL 5185785, at *17 (Atcheson, J., concurring and dissenting). Our review of the cases does not yield the same assessment.

In *Ferrellgas Corporation v. Phoenix Ins. Co.*, 187 Kan. 530, 534, 358 P.2d 786 (1961), this court suggested that the application of K.S.A. 40-908 turns on the type of policy involved. The specific issue presented in that case was whether the passage of K.S.A. 40-256, which provided for attorney fees if an insurance company's denial of a claim was not in good faith, effected a repeal by implication of K.S.A. 40-908. *Ferrellgas* rejected the repealed-by-implication argument, determining that K.S.A. 40-908 and K.S.A. 40-256 could coexist as follows: "If the policy is one insuring property as provided in the old statute [K.S.A. 40-908], the insurance company must pay attorney fees as provided therein. If the judgment is as to any other type of policy, then the insurance company may govern its liability under the newer statute [K.S.A. 40-256]." 187 Kan. at 534-35.

The *Ferrellgas* holding that K.S.A. 40-256 did not repeal K.S.A. 40-908 by implication was followed in *Liggett*, 236 Kan. at 127-28. *Liggett* also declined to narrowly construe K.S.A. 40-908 to disallow attorney fees where the insurance company contested the claims in good faith and further found that K.S.A. 40-908 should apply to commercial entities. 236 Kan. at 128.

*Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 882, 953 P.2d 1027 (1998), explicitly and unequivocally held that the type of loss does *not* control whether K.S.A. 40-908 applies. There, the plaintiff's insurance company had denied a claim under his homeowner's insurance policy for a basement wall that collapsed. A jury found in favor of the plaintiff, but the district court refused to order attorney fees under K.S.A. 40-908. On appeal, the insurer argued that the Tenth Circuit's decision in *Millers' Nat. Ins. Co.* supported

"its argument that K.S.A. 40-908 applies only to those losses which actually occur as the result of fire, tornado, lightning, or hail." 263 Kan. at 879. *Hamilton* rejected that notion:

"We conclude K.S.A. 40-908 is designed to provide for attorney fees for the homeowner upon successful suit under the policy absent a tender by the insurance company. Fees shall be allowed as a part of the costs under the statute where the homeowner obtains judgment for a covered loss under the homeowner's policy, which judgment is in excess of any amount tendered by the insurance company before commencement of the action. Application of the statute is not dependent upon the type of loss incurred. Rather, providing all conditions of the statute are met, costs, including reasonable attorney fees, are awarded where policy coverage for the loss incurred by the insured homeowner exists." 263 Kan. at 882.

Pointedly, *Hamilton* did not restrict the statutory attorney fees to the circumstance where the existence of policy coverage only involved the property portion of the homeowner's policy, as opposed to the liability portion of the policy. See 3 Martinez, Mayerson & Richmond, New Appleman Insurance Law Practice Guide § 33.04, p. 33-10 (2014) (noting that most common homeowner's policy covers not only home's physical structure and contents, but also homeowner's personal liability to third parties). Moreover, *Hamilton* specifically declared that its conclusion was supported by "[t]he plain language of K.S.A. 40-908." 263 Kan. at 882. The court was clearly applying a literalistic reading of the statute when it provided more than just a shorthand explanation, as follows:

"[The statute] provides application to any case in which a judgment is rendered on *any policy* given to insure any property against loss by fire, tornado, lightning, or hail. The policy coverage controls, not the actual type of loss. If the loss is covered by a policy which insures against fire, tornado, lightning, or hail, then the statute applies regardless of whether the actual loss occurred by one of those named causes or some other cause covered by the same policy." 263 Kan. at 882.

Recently, in *Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co.*, 281 Kan. 844, 861-62, 137 P.3d 486 (2006), this court applied K.S.A. 40-908 to award attorney fees in an action pursued under a liability claim, specifically rejecting the argument that K.S.A. 40-908 "applies only to property insurance claims." In doing so, we quoted much of the above language from *Hamilton*. *Lee Builders*, 281 Kan. at 860-61. As Bussman pointed out, the extension of ap-

plicability of K.S.A. 40-908 to a third-party claim that was made in *Lee Builders* was a far greater leap than that which is proposed here, given that a UIM claim is considered a first-party claim. See *Ray v. Caudill*, 266 Kan. 921, 924, 974 P.2d 560 (1999); see also 9 Couch on Insurance 3d § 122:5, p. 122-16 (Rev. ed. 2008) (stating that UM/UIM coverage "provides first-party benefits as opposed to a liability policy which pays third-party benefits").

*Amicus* KADC mounts an argument, beginning with the assertion that all of the cases prior to *Lee Builders* were property damage cases. See *Liggett*, 236 Kan. 120 (fire damage to home); *Thomas v. American Family Mut. Ins. Co.*, 233 Kan. 775, 666 P.2d 676 (1983) (windstorm damage to home); *Ferrellgas*, 187 Kan. 530 (wind damage to building); *Lambert v. St. Paul Fire & Marine Ins. Co.*, 178 Kan. 533, 289 P.2d 1057 (1955) (fire damage to crop); *Osborn v. Wheat Growers Mutual Hail Ins. Co.*, 175 Kan. 235, 263 P.2d 214 (1953) (hail damage to crop); *Geselle v. American Home Fire Assur. Co.*, 146 Kan. 138, 68 P.2d 1097 (1937) (fire damage to household goods and personal effects); *Bussell v. Mennonite Mutual Fire Ins. Co.*, 137 Kan. 542, 21 P.2d 308 (1933) (fire damage to barn); *Phoenix Mutual Life Ins. Co. v. Central States Fire Ins. Co.*, 137 Kan. 69, 19 P.2d 696 (1933) (fire damage to property); *Light v. St. Paul Fire & Marine Ins. Co.*, 132 Kan. 486, 296 P. 701 (1931) (hail damage to crop); *Gants v. National Fire Ins. Co.*, 127 Kan. 251, 273 P. 406 (1929) (fire damage to home).

Then, KADC argues that *Lee Builders* was wrongly decided, relying on the decisions in *Loucks v. Farm Bureau Mut. Ins. Co.*, 33 Kan. App. 2d 288, 101 P.3d 1271 (2004), *rev. denied* 279 Kan. 1006 (2005), and *Narron v. Cincinnati Ins. Co.*, 32 Kan. App. 2d 28, 78 P.3d 1188 (2003), *aff'd in part and rev'd in part on other grounds* 278 Kan. 365 (2004). But in those cases, the courts did not specifically discuss the applicability of K.S.A. 40-908 and are unpersuasive.

We also note that KADC attempted to argue that applying K.S.A. 40-908 to UIM claims is unconstitutional. This issue, however, was not raised by Safeco at trial and is therefore not properly before this court for review. See *Hall v. State Farm Mut. Auto. Ins. Co.*, 8 Kan. App. 2d 475, 481, 661 P.2d 442, *rev. denied* 233 Kan.

1091 (1983) ("An *amicus curiae* brief cannot raise issues that were not presented before the trial court."). Furthermore, constitutional grounds for reversal cannot be raised for the first time on appeal. See *Miller v. Bartle*, 283 Kan. 108, 119, 150 P.3d 1282 (2007).

To conclude, we have to acknowledge that many of the arguments proffered by Safeco, Judge Atcheson, and the *amicus* KADC are seductively logical and just make sense. If we were writing on a clean slate, the result might be different. But we cannot ignore the fact that the legislature used very sweeping and inclusive language in K.S.A. 40-908 and, since the popularization of combination-coverage policies some 50 years ago, it has made no effort to modernize or change that language. Perhaps more importantly, in the 15 years since *Hamilton* the legislature has not attempted to correct this court's interpretation of the plain language of K.S.A. 40-908. Notwithstanding any public policy considerations and regardless of what one might speculate that the legislature meant to do, the plain language of K.S.A. 40-908 says that the court *shall* allow the plaintiff reasonable attorney fees as part of the costs in *all* actions in which judgment is rendered against *any* insurance company on *any* policy given to insure *any* property in this state against loss by fire, tornado, lightning, or hail. Under that interpretation, Bussman is entitled to attorney fees as part of the costs of her action in which judgment was rendered against Safeco on a policy that insured property against loss by fire, tornado, lightning, or hail, *i.e.*, all of the elements of K.S.A. 40-908 were present.

In conclusion, we affirm the Court of Appeals' decision affirming the trial court's denial of Safeco's judgment as a matter of law on Safeco's claim that Bussman named the wrong insurance company as the defendant in this lawsuit. We reverse the Court of Appeals and district court's decisions on Safeco's motion for partial summary judgment on future medical expenses and vacate the $20,000 jury award of future medical expenses. We affirm the Court of Appeals' reversal of the trial court's denial of Bussman's attorney fee request under K.S.A. 40-908 and remand to the district court for further consideration of the request to be awarded as costs.

Affirmed in part, reversed in part, vacated in part, and remanded with directions to the district court.