NOT DESIGNATED FOR PUBLICATION

No. 120,298

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DERRICK RICHARD,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC A. COMMER, judge. Opinion filed January 21, 2020.
Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before ATCHESON, P.J., BRUNS, J., and BURGESS, S.J.

PER CURIAM:  A jury convicted Derrick Richard of first-degree murder and
criminal possession of a firearm. Richard filed a direct appeal and the Kansas Supreme
Court affirmed his conviction. *State v. Richard*, 300 Kan. 715, 730, 333 P.3d 179 (2014).
Richard timely filed a motion for habeas corpus relief under K.S.A. 60-1507 and made
eight claims for relief. The district court held a preliminary hearing and denied Richard's
motion. On appeal, Richard argues that the district court failed to comply with Kansas
Supreme Court Rule 183(j) (2019 Kan. S. Ct. R. 228), which requires a district court to

1

make findings of fact and conclusions of law on all issues raised in a K.S.A. 60-1507 motion. Richard also argues the district court erred when it denied his request for an evidentiary hearing. We find that Richard did not preserve the first issue for appeal and even if he had, the district court properly complied with Supreme Court Rule 183(j). As to his second issue, Richard's argument is based on conclusory statements. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In July 2010, the State charged Richard with first-degree murder and criminal possession of a firearm. A jury convicted Richard as charged, and he was sentenced to life in prison with an additional 19 months. On direct appeal, the Kansas Supreme Court stated the facts of Richard's underlying case as follows:

"During the evening of July 16, 2010, Grady Lane and his wife, Erin Gonzalez-Lane, were watching television in the second-story family room of their home at 532 North Wabash in Wichita, Kansas. Gonzalez-Lane went downstairs to bed around 10 p.m., while Lane stayed in the family room to play video games. At around 11 p.m., Gonzalez-Lane heard what she described as "'[p]ow, pow, pow, pow.' Gonzalez-Lane assumed the noise was fireworks; therefore, after checking on her children, she decided all was well and went to sleep.

"That same evening, at approximately 11 p.m., Officer Jason Waite responded to a call reporting gunshots fired in the nearby area of 500 North Ohio. Officer Waite encountered Derrick Richard in the street between two houses at 529 and 532 Wabash, but Richard said he had not heard gunshots or fireworks.

"The next morning, Gonzalez-Lane discovered Lane still in the upstairs family room, but he was not breathing and there was 'a lot of blood.' Officers Chad Richardson and Channara Seang responded to Gonzalez-Lane's 911 call. They observed Lane, dead from a gunshot wound to the head, slumped over on his side as if he had been sitting upright on the couch and had fallen over. The officers discovered a single bullet hole in the family room window glass and three bullet holes in an interior wall, all of which appeared to have come from outside. Crime Scene Investigator Natalie Rowe collected three bullet fragments from inside the room.

2

"The family room window faced the Lane's backyard, and an officer noted that if Lane had been sitting up on the couch, he would have been visible through the window for a shooter located in the backyard. A search of Lane's backyard yielded four spent cartridge casings (fired rounds) and one unfired cartridge, all designed to be used in a .45 caliber handgun and all manufactured by Speer. The cartridges were found approximately 20 to 25 yards from the family room window.

"Gonzalez-Lane told police she 'had a notion' that Richard, their neighbor directly to the south at 524 North Wabash, killed Lane because the two men had been in a dispute over a dog. Gonzalez-Lane also told police that Richard had previously fired shots in the neighborhood, after which he called Lane to tell him Richard was 'just blowing off some steam and . . . everything was okay.'

"Richard lived with his daughter, Jasmine Huff, and his father, Irving Richard. After obtaining Huff's permission to search the family's backyard, officers found seven .45 caliber spent casings and one live .45 caliber cartridge. Four of the spent casings were manufactured by Winchester, while the other three, as well as the live cartridge, were manufactured by Speer.

"Detective Robert Chisholm interviewed Richard three times. The first interview began at 9 a.m. on July 17, 2010, with the detective advising Richard of his *Miranda* rights. Richard told the detective that he and Lane had been friends until they got into a dispute over a dog. He denied having any guns and said that he had not heard any shots fired the previous evening. Richard also denied that he had previously discharged a firearm in his yard or that he had called Lane to apologize for doing so, albeit he had no explanation for the shell casings found in his yard. Five and a half hours into the interview, Richard told Detective Chisholm that he was ill and needed to go to the hospital, whereupon the detective stopped the interview and called Emergency Medical Services.

"During that first interview, Richard had given consent for the police to search his home for guns, drugs, and evidence related to this crime. But Richard told the detective that only Irving had access to a storage area in the back of the house, and the detective relayed that information to the officers at the scene. In Richard's bedroom, the police found a box of ammunition containing twenty-nine .45 caliber semiautomatic cartridges manufactured by Speer and a gun case. Irving gave the officers permission to search a padlocked storage area on the enclosed back porch and provided the officers with a key for the padlock. Officers searched the storage area and located a .45 caliber

3

gun manufactured by Haskell and a magazine. The magazine contained seven .45 caliber cartridges manufactured by Speer.

"Upon Richard's release from the hospital and after reminding him of his *Miranda* rights, Detective Chisholm interviewed Richard for another 30 to 45 minutes. Richard admitted owning the gun that the detective said they had found at his house. Richard explained that he normally stored the loaded gun underneath his mattress. In response to the detective's query about the 14 rounds of ammunition missing from the box found in his house, Richard related that on a prior occasion he had fired the handgun into the air, after which he called Lane to explain what he had done. He also admitted shooting his gun on the Fourth of July and firing at a dog causing trouble in the neighborhood. Richard continued to deny hearing shots or shooting at Lane's house on the night of Lane's death. Richard eventually concluded the interview.

"The next morning, at Richard's request, Detective Chisholm conducted another interview. After the detective had Richard read his *Miranda* rights aloud, Richard admitted shooting his gun from Lane's backyard six times the night of Lane's death to send Lane a message to leave him alone.

. . . .

"Sedgwick County Regional Forensic Science Center firearm and tool mark examiner Gary Miller opined that three of the spent casings from Richard's yard and all of the spent casings from Lane's yard came from Richard's gun. The other casings and live cartridges lacked sufficient identification markings to pair them with a particular firearm. Miller noted that the three bullet fragments found in Lane's home had the same class characteristics as ammunition that would be used in Richard's gun but could not definitively say if they were fired from Richard's handgun.

"Richard testified in his own defense. He explained that on the day of Lane's death, he went over to a friend's house at around 7:30 p.m. to play cards. He stayed about 2 1/2 to 3 hours before returning home. When he got home, he went for a walk. Hoping to resolve his dispute with Lane, Richard stopped by Lane's residence to see if Lane was on his back porch where he usually sat. Lane was not outside, so Richard pulled his gun out and shot into the air. Richard then went home, put his gun away, and went across the street to talk to a friend.

"Richard said he could not explain why he shot his gun in the air but said, '[A]s they stated, I was known to shoot my gun in the air at different times, so I did shoot the gun in the air.' Richard stated that he shot five or six times but never shot the gun at the

4

house. He explained that one of Lane's children was in the house, so he would have never shot at the house." *Richard*, 300 Kan. 716-19.

In his direct appeal, Richard raised several claims of error. First, Richard argued that "the district court violated his right to a fair trial by permitting the State to introduce prior crimes evidence through testimony that established he had previously discharged his handgun in his backyard." 300 Kan. at 719. Second, Richard argued that "the district court erred when it failed to grant his motion to suppress his post-*Miranda* statements to police as being involuntary." 300 Kan. at 725. Third, Richard argued that "the district court erred in denying his motion to suppress evidence found during a warrantless search of a locked storage area at his residence." 300 Kan. at 726. The Kansas Supreme Court affirmed his conviction. 300 Kan. at 730.

Richard then timely filed a pro se K.S.A. 60-1507 motion. In his motion, Richard argued that his trial counsel was ineffective on multiple grounds:  counsel failed to impeach certain State witnesses, counsel failed to call Officer Brian to testify, counsel failed to obtain an expert to explain the ballistics and forensic evidence, counsel failed to attack the search of his home, counsel failed to refute the State's evidence, and counsel failed to act as a "true advocate." Richard also argued that his constitutional rights were violated by prosecutorial and judicial errors.

The State submitted a response to Richard's motion and organized Richard's arguments into eight issues. The district court held a preliminary hearing on the motion, and the parties presented arguments. At the hearing, Richard emphasized that if his trial counsel would have employed a ballistics expert, then he would have been "excluded or exonerated as the shooter in this case" and argued that he was entitled to an evidentiary hearing. The State argued that Richard's claims are "generalities" and "conclusory" and did not meet the standard required by K.S.A. 60-1507 which necessitates the movant to bring forth evidence to support these assertions.

5

The district court agreed with the State and denied Richard's K.S.A. 60-1507 motion. In making its findings, the district court addressed Richard's issues as they were listed by the State in its response and made findings of fact and conclusions of law as to each of the eight issues.

Richard timely filed this appeal.

DID THE DISTRICT COURT ERR IN
SUMMARILY DENYING RICHARD'S K.S.A. 60-1507 MOTION?

On appeal, Richard argues that the district court failed to comply with Supreme Court Rule 183(j) when it summarily denied his K.S.A. 60-1507 motion without making findings of fact and conclusions of law on all issues. The State argues that this claim was not preserved below and that Richard does not argue any exception or why it should be heard for the first time on appeal. The State argues that even if this court reviews the issue, the district court made sufficient findings and conclusions.

To be entitled to relief under K.S.A. 60-1507, the movant must establish by a preponderance of the evidence either: (1) "the judgment was rendered without jurisdiction"; (2) "the sentence imposed was not authorized by law or is otherwise open to collateral attack"; or (3) "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." K.S.A. 60-1507(b); Supreme Court Rule 183(g) (2019 Kan. S. Ct. R. 228).

Kansas Supreme Court Rule 183(j) (2019 Kan. S. Ct. R. 230) states that a district court considering a K.S.A. 60-1507 motion "must make findings of fact and conclusions of law on all issues presented." Whether the district court's findings of fact and conclusions of law comply with Supreme Court Rule 183(j) is a question of law that is reviewed de novo. *Robertson v. State*, 288 Kan. 217, 232, 201 P.3d 691 (2009).

6

*Richard did not properly preserve this issue for appellate review.*

Generally, an issue not raised before the trial court cannot be raised on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). Nor can constitutional grounds for reversal be asserted for the first time on appeal. *Bussman v. Safeco Ins. Co. of America,* 298 Kan. 700, 729, 317 P.3d 70 (2014). There are several exceptions to this general rule.

"'(1) The newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3) the district court is right for the wrong reason. [Citation omitted.]'" *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015) (quoting *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 [2010]).

Moreover, Kansas Supreme Court Rule 6.02(a)(5) (2018 Kan. S. Ct. R. 35) states:

"Each issue must begin with citation to the appropriate standard of appellate review and a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on. If the issue was not raised below, there must be an explanation why the issue is properly before the court."

The Kansas Supreme Court has stated that in order to comply with Rule 6.02(a)(5), a party must *explain why* an issue is being raised for the first time on appeal. *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014). Our Supreme Court has warned that future litigants need to comply with Supreme Court Rule 6.02(a)(5) "or risk a ruling that an issue improperly briefed will be deemed waived or abandoned." 298 Kan. at 1085. Our Supreme Court strictly enforces this rule. *Godfrey*, 301 Kan. at 1043-44.

In order to give the district court the opportunity to correct inadequacies in the court's findings of facts and conclusions of law, litigants and their counsel generally bear

7

the responsibility of objecting to such errors. In the absence of an objection, omissions in findings will not be considered on appeal. See *State v. Herbel*, 296 Kan. 1101, 1119, 299 P.3d 292 (2013). Without an objection, our court presumes the district court found all the facts necessary to support its judgment, but this court may consider a remand if the lack of specific findings precludes meaningful review. *State v. Vaughn*, 288 Kan. 140, 143, 200 P.3d 446 (2009).

For the first time on appeal, Richard argues that the district court failed to comply with Supreme Court Rule 183(j) and this failure violated his right to due process. Richard does not make a claim specific to either the Kansas or the United States Constitutions, but generally argues that his due process rights were implicated by the district court's failure to follow Supreme Court Rule 183(j). The State properly argues that Richard failed to preserve this issue for appellate review.

Given that Richard did not object to any claimed violation of Supreme Court Rule 183(j) and he did not raise the constitutional argument at the district court, he did not preserve this issue for appeal. Further, Richard makes no attempt to explain why this issue is now properly before this court. Because Richard did not preserve the issue below and failed to comply with Supreme Court Rule 6.02(a)(5), Richard has not preserved this claim for appellate review. See *Godfrey*, 301 Kan. at 1044.

*Even if Richard preserved this issue for appeal, the district court complied with the requirements of Supreme Court Rule 183(j).*

On appeal, Richard does not argue that the district court failed to follow Supreme Court Rule 183(j) because it did not address certain issues. Instead, it appears that Richard's argument rests on a colloquy between the district court judge and the State at the end of the preliminary hearing. The district court addressed Richard's claims as they were summarized in the State's response to Richard's K.S.A. 60-1507 motion and then

made findings of facts and conclusions of law as to each issue. After the district court finished addressing the eight issues, the district court and the State had the following exchange:

"[STATE]: Your Honor, with regard to your findings, there were a few points that were covered in the State's response that the Court did not specifically address. With regard to those, is the Court adopting the State's response with regard to those? For example—

"[DISTRICT COURT JUDGE]: I have reviewed your response—

"[STATE]: Sure.

"[DISTRICT COURT JDUGE]: —and I have sought by what I have put on the record here to adopt the State's response on every issue. If there is something I omitted, it was not intentional.

"[STATE]: Okay. This is just what I wanted to clarify in drafting the journal entry.

"[DISTRICT COURT JUDGE]: I thought though that it might be helpful, at least, to have me make statements that were consistent with what you argued—

"[STATE]: Sure.

"[DISTRICT COURT JUDGE]: —that were—if there is something specific that you think I did not address, please mention it if you think it needs to be done."

Based on this exchange, Richard argues: "What seems obvious from the hearing transcript is that the Court is giving carte blanche to the State to dictate whatever the State decides is a finding of fact or conclusion of law and the Court will sign off on that decision." Richard adds that Supreme Court Rule 183(j) "specifically states that the Court will make findings of fact and conclusions of law on all issues presented, not the State. To do otherwise implicates Mr. Richard's right to due process."

As pointed out by the State, Richard does not specify what errors the district court made when it denied his motion. Rather, Richard makes "vague accusations that the State

dictated the findings of fact and conclusions of the law of the court." A review of the record supports the State's argument.

At the preliminary hearing, the district court chose to address Richard's issues in the order the State listed them in its response. The district court did so because Richard's motion had several sections that "appear[ed] to reference similar things." The district court addressed in detail every issue that was raised in the order they were presented. The district court adhered to Supreme Court Rule 183(j) as to every issue raised by Richard.

The State proceeded to submit an order denying Richard relief under his K.S.A. 60-1507 motion. The order stated that the district court "adopted the facts contained in the State's response and the legal arguments made in that response and in court." The order also stated the issues, stated the findings as to why each issue was summarily denied, and did not include any information not discussed at the preliminary hearing. Additionally, the order was approved and signed by the district court, the State, and Richard's attorney.

A review of Richard's motion determined that the eight issues listed by the State were an accurate description of Richard's claims. The district judge addressed each issue from the bench and indicated that he read and agreed with the State's response in its entirety. The court's order did not include any findings or conclusions not addressed at the preliminary hearing, and the district court did not err in addressing each issue pursuant to Supreme Court Rule 183(j). Having found no error, we find that the district court properly complied with the requirements of Supreme Court Rule 183(j).

## DID THE DISTRICT COURT ERR WHEN IT DENIED RICHARD'S K.S.A. 60-1507 MOTION WITHOUT AN EVIDENTIARY HEARING?

Richard argues that the district court erred when it found he failed to present sufficient evidence to justify an evidentiary hearing on the issue of whether his trial counsel was ineffective for failing to hire a ballistics expert. The State argues that the district court was not required to hold a hearing as to this issue because Richard's claim was conclusory, no substantial issues of fact were presented, and Richard failed to state an evidentiary basis for the claim.

When the district court dismisses a habeas motion based on the motion, files, and records after a preliminary hearing, this court's review is de novo. See *Grossman v. State*, 300 Kan. 1058, 1061, 337 P.3d 687 (2014).

To avoid the summary denial of a motion brought under K.S.A. 60-1507, a movant bears the burden of establishing entitlement to an evidentiary hearing. To meet this burden, a movant's contentions must be more than conclusory, and either the movant must set forth an evidentiary basis to support those contentions or the basis must be evident from the record. If such a showing is made, the court is required to hold a hearing unless the motion is a "second" or "successive" motion seeking similar relief. *Sola- Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014) (citing *Holt v. State*, 290 Kan. 491, 495, 232 P.3d 848 [2010]); see *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015).

The district court shall hold an evidentiary hearing on a K.S.A. 60-1507 motion and make findings of fact and conclusions of law with respect thereto, unless the motion and the files and records of the case conclusively show the movant is not entitled to relief. K.S.A. 60-1507(b); Supreme Court Rules 183(f) and (j) (2019 Kan. S. Ct. R. 228).

11

Our Supreme Court has held that an evidentiary hearing on a K.S.A. 60-1507 motion is not required

> "if the motion together with the files and records of the case conclusively show that the movant is not entitled to relief. The burden is on the movant to allege facts sufficient to warrant a hearing. If no substantial issues of fact are presented by the motion, the district court is not required to conduct an evidentiary hearing." *Moncla v. State*, 285 Kan. 826, Syl. ¶ 1, 176 P.3d 954 (2008).

In his motion, Richard argued that his trial counsel was ineffective because he failed to obtain a ballistics expert who would have refuted the testimony of the State's expert. Richard also argued that an expert would have uncovered a conspiracy by law enforcement officers to plant or manufacture evidence. At the preliminary hearing, Richard's attorney argued that "Richard's argument boils down to the fact that he believes that if [trial counsel] had employed an expert in the area of ballistics, that he would have been excluded or exonerated as the shooter in this case. That is the overall claim that Mr. Richard is making." Richard's counsel added:

> "[H]e believes that he is entitled to an evidentiary hearing, because he states that critical conversations between himself and his trial counsel are relevant to the Court's decision. He stated that otherwise those conversations between himself and trial counsel would be privileged and that none of those appear anywhere in the record.
> "So, Judge, he is making the contention that he believes he is entitled to an evidentiary hearing on the basis that there should be a credibility determination essentially between Mr. Richard and [his trial counsel]."

Richard's counsel later expanded on this claim and stated:

> "Richard's contention is that [trial counsel] was ineffective for not hiring an expert to show what he believed would be exculpatory evidence, and his only contention with respect to any detail was that [trial counsel] did not feel comfortable—and I am not using

12

Mr. Richard's words. His words actually were that he believed that [trial counsel] told him, 'I have to live in this town, and I have to do business with this Court.' He believes that would be the testimony if he were to have an evidentiary hearing in which both parties, Mr. Richard and [trial counsel], were allowed to testify."

As discussed, the district court ultimately determined that Richard's claims as to this issue were not persuasive and found:

"The Court does not find any evidence of a conspiracy shown here, which it was in essence a third claim made by Mr. Richard, and in reviewing the testimony, the Court agrees with the State that even had an expert been called, it is doubtful that an expert, based on the physical evidence, would have been able to testify to anything contrary to what the testimony was of . . . the firearms examiner, Miller, because Miller's testimony was that the bullets that were fired, once they had been fired and struck the [victim's] house, were only fragments and were then distortions, basically, that would not have allowed for a firearms examiner to determine what weapon they were fired by.

"The testimony was actually beneficial, as the examination of [trial counsel] showed, to get Mr. Miller to say that he could not confirm that those bullets came from the gun that was owned by [Richard] or that was fired by [Richard]. . . . That actually worked in his favor in his defense."

To prove a claim of ineffective assistance of counsel, a movant must show that (1) counsel's performance was deficient and (2) counsel's deficient performance caused prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); see also *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985) (adopting *Strickland*). Counsel's performance was deficient if, considering all the circumstances, it "fell below an objective standard of reasonableness." *Bledsoe v. State*, 283 Kan. 81, 90, 150 P.3d 868 (2007).

The essence of Richard's claim is that if his trial counsel would have hired a ballistics expert, such expert would have been able to establish that the bullets could have

been tested, which was counter to the State's expert who testified that the bullets were too degraded to test, and he would have been "excluded or exonerated." He claims the testimony of his expert would have exonerated him and proved that the State presented false evidence. This argument is based on Richard's conclusion that a photograph of "mostly if not completely whole" bullets could have been tested. Richard offered no evidence other his conclusion that supported this argument.

Richard contended that if his trial counsel would have hired an expert, then the expert "would have testified that the version of acts as alleged by the State not only did not match the physical evidence but could not have in any manner been fired from one location." To support this argument, Richard analyzed the trajectory of the bullets at length and argued that the bullet paths indicated that the bullets could not have come from where the State alleged Richard shot them from. Again, Richard's argument is based solely on his conclusions. There was nothing presented to support Richard's conclusions.

Richard made a detailed argument regarding his conspiracy claim that his trial counsel was ineffective because counsel knew—or should have known—that the bullets recovered from the scene "not only did not come from petitioner's pistol but the casings said to have been found, were in fact recovered from petitioner's back yard and exchanged for the casing which had been found at the scene." Richard disputed the brand of bullets found at the scene and the number of bullets he believed should have been found. Richard appeared to argue that law enforcement switched the Winchester brand ammunition at the scene for the Speer brand ammunition from Richard's backyard. Richard contended that an expert would have analyzed the amount of tarnishment on the casings to determine if the casings "had been exposed to the elements" and for how long. Richard also contended that his trial counsel "refused to present evidence in the form of complaints" made against the same law enforcement officers involved in his case for manufacturing or planting evidence. All of Richard's arguments are based on what he

believes and what he concludes based on those beliefs. Nothing else supports those arguments.

The State primarily argues that strategic and tactical trial decisions are the exclusive province of the lawyer. See *Flynn v. State*, 281 Kan. 1154, 1165, 136 P.3d 909 (2006) (finding "deliberate decisions based on strategy may not establish ineffective assistance of counsel"). The State contends Richard's trial counsel's decision to not hire a ballistics expert was a tactical decision. Regardless of whether it was a tactical decision or not, nothing Richard has offered is more than conclusions on his part. There was nothing presented other than Richard's conclusions that could establish an evidentiary basis for his claims. Something more than what was offered was required to justify an evidentiary hearing.

Affirmed.