No. 123,581

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

HAROLD JOHNSON,
*Appellant*,

v.

BOARD OF DIRECTORS OF FOREST LAKES MASTER ASSOCIATION,
*Appellee*.

SYLLABUS BY THE COURT

1.

When an appellate court's decision and mandate is fully determinative of the issues presented in the proceedings below, they become a part of the judgment in the case without further order of the trial court. This is because there is no need to remand the case to the trial court with directions to take a certain action when the appellate court has fully decided the disputed issues in a case. It is only when an appellate court's mandate does not fully determine the issues pending before the trial court that directions are necessary or appropriate to control the conduct of further proceedings to resolve any remaining issues.

2.

When an appellate court's mandate or opinion reverses one issue with directions but includes no directions as to another issue it decided on appeal, the appellate court's lack of directions as to this other issue simply means that the appellate court has fully decided that other issue on appeal.

3.

The plain language of K.S.A. 2020 Supp. 58-4621 lacks a deadline requiring prevailing parties to move for attorney fees by a certain date but includes fair and explicit notice that except in rare instances, the trial court may award the prevailing party reasonable attorney fees upon the prevailing party's motion for reasonable attorney fees.

Appeal from Sedgwick District Court; ERIC A. COMMER, judge. Opinion filed December 10, 2021. Reversed and remanded with directions.

*Michael R. Andrusak*, of Adams Jones Law Firm, P.A., of Wichita, for appellant.

*T. Chet Compton*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and BUSER, JJ.

GREEN, J.: Harold Johnson appeals the trial court's order denying his request for trial court attorney fees upon remand from our decision in *Johnson v. Board of Directors of Forest Lakes Master Assoc.*, No. 120,145, 2019 WL 7207550 (Kan. App. 2019) (unpublished opinion), *rev. denied* 312 Kan. 892 (2020)—a case where we reversed the trial court's order granting the Board of Directors of Forest Lakes Master Association's summary judgment motion and remanded with directions to grant Johnson's summary judgment motion. On appeal, Johnson argues that the trial court wrongly denied his motion for attorney fees because it did so based on an errant interpretation of the *Johnson* court's mandate. Indeed, because a review of the trial court's decision establishes that it clearly misinterpreted the *Johnson* court's mandate when denying Johnson's motion upon remand from *Johnson*, we reverse and remand with directions that the trial court consider and then rule on the merits of Johnson's motion for attorney fees.

In the first part of this opinion, we will be discussing attorney fees incurred at the trial level. In the last section of this opinion, however, we will be discussing attorney fees incurred at the appellate level.

FACTS

In *Johnson*, we held: (1) that Johnson had standing to sue the Board, (2) that the trial court wrongly granted the Board's summary judgment motion, and (3) that the trial court wrongly denied Johnson's summary judgment motion. There, the Board and Johnson's primary dispute involved whether the Board violated the Association's Declaration of Covenants and Bylaws' voting procedures when trying to pass an amendment to change those procedures. 2019 WL 7207550, at *1-5. In the end, because the record on appeal established that the Board had violated its voting procedures as argued by Johnson in his summary judgment motion, we "reverse[d] the trial court's order granting summary judgment in favor of the Board *and direct*[*ed*] *the trial court to grant summary judgment in favor of Johnson*." (Emphasis added.) 2019 WL 7207550, at *1.

Nevertheless, in addition to this voting procedure dispute, in *Johnson*, we addressed the parties' competing arguments regarding trial court attorney fees. Even though the Board asserted that the trial court properly awarded it attorney fees, we reversed the trial court's award since it hinged on its errant decision to grant the Board's summary judgment motion. 2019 WL 7207550, at *15. And after Johnson moved for appellate attorney fees, we denied Johnson's motion because it was untimely. 2019 WL 7207550, at *14. Similarly, Johnson argued that he was entitled to trial court attorney fees. But we held that Johnson's request was not properly before us for the following reason:

"In his petition, Johnson requested attorney fees. Yet, after making this request, Johnson did not request attorney fees again. That is, he did not assert he was entitled to

3

attorney fees in his summary judgment motion. Nor did he file a separate motion for attorney fees. After filing his petition, Johnson only referenced attorney fees when discussing why the Board was not entitled to attorney fees. As a result, the issue of whether Johnson was entitled to attorney fees was not before the trial court when it denied his motion for summary judgment.

"Issues not raised before the trial court cannot be raised for the first time on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). Because Johnson did not request attorney fees in his summary judgment motion, *Johnson cannot request that we grant his request for trial court attorney fees for the first time on appeal*." (Emphasis added.) 2019 WL 7207550, at *14.

Then, after refusing to consider Johnson's attorney fees request since he was raising it for the first time on appeal, the *Johnson* court gave an alternative reason for denying Johnson's request:

"Furthermore, even if we assumed for argument's sake that the issue of Johnson's attorney fees was before the trial court, Johnson did not object to the trial court's failure to make findings of fact or rulings of law on his attorney fee request. Johnson had the burden of objecting to the trial court's findings and rulings if he believed them inadequate. Consequently, we must presume that the trial court found all necessary facts and rulings for its judgment. Thus, Johnson's request for trial court attorney fees fails for this reason as well. See *In re Marriage of Knoll*, 52 Kan. App. 2d 930, 941, 381 P.3d 490 (2016) (holding that a party who fails to object to the trial court's inadequate attorney fees findings and rulings cannot claim error on appeal)." 2019 WL 7207550, at *14.

Once Johnson's case was remanded to the trial court upon our Supreme Court's denial of the Board's petition for review, Johnson filed a motion for attorney fees. In this motion, Johnson asserted that because the *Johnson* court had held that "the issue of whether [he] was entitled to attorney fees was not before the trial court when it denied his motion for summary judgment," he could now move for attorney fees. In particular, he asserted that because he had never formally moved for attorney fees yet had still asked

4

for them in his original petition, "there remain[ed] one claim in [his] case that ha[d] not been resolved."

To support his argument, Johnson pointed to the plain language of K.S.A. 2020 Supp. 58-4621(a)—the statute that allowed him to request reasonable attorney fees because he successfully sued the Board for violating the Kansas Uniform Common Interest Owners Bill of Rights Act. See K.S.A. 2020 Supp. 58-4601. He noted that subsection (c) of K.S.A. 2020 Supp. 58-4621 required the trial court to "liberally administer[]" the provision so that he, as "the aggrieved party" was "put in as good a position" as if the Board had never violated the Act. And Johnson argued that our Supreme Court's decision in *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 317 P.3d 70 (2014), stood for the proposition that a prevailing party may move for attorney fees postjudgment. He thus asked the trial court to award him reasonable attorney fees, which he alleged totaled $52,254.76. At the same time, in his motion, Johnson also asked the trial court to award him trial court costs, which he alleged totaled $958.80.

Even though the Board largely ignored Johnson's request for trial court costs, it responded that the trial court should deny Johnson's motion for attorney fees. It asserted that Johnson was not entitled to such fees because we ruled on the merits of his attorney fees request in *Johnson*, deciding the issue against him. It argued that this meant that the law of the case doctrine now barred Johnson from moving for attorney fees upon remand.

In support of its argument, the Board stressed that in summarizing the attorney fees issues in *Johnson*, that court held that "neither party [was] entitled to any attorney fees." 2019 WL 7207550, at *1. It further asserted that by not requesting attorney fees in the trial court's pretrial conference order, Johnson had forever abandoned any claim he may have had about his right to attorney fees. As a result, the Board asked the trial court to deny Johnson's motion for attorney fees without considering the merits, i.e., the reasonableness, of the actual attorney fees that Johnson had requested in his motion.

5

After the Board filed its response, Johnson filed a reply addressing the Board's assertion that the pretrial conference order needed to include his attorney fees request. He argued that nothing under K.S.A. 2020 Supp. 58-4621's plain language stated that he had to move for attorney fees before the trial court entered the pretrial conference order. Still not entirely clear, it also seems that Johnson argued that our Supreme Court's decision in *Bussman* as well as our decision in *Harder v. Foster*, 54 Kan. App. 2d 444, 401 P.3d 1032 (2017), supported that he could move for attorney fees postjudgment. Alternatively, he moved to amend the pretrial conference order to include his request for attorney fees. He noted that K.S.A. 2020 Supp. 60-216(e)—the provision governing pretrial conference orders—and *Bussman* supported that such orders could later be amended "to prevent manifest injustice." Then, citing to this precedent as well as the *Johnson* court's holding that he was entitled to summary judgment because the Board had violated its voting procedures, Johnson argued that under the assumption the pretrial conference order needed to include his attorney fee request, the trial court should now amend the pretrial conference order to include his request. He asserted that under the facts of his case, the trial court's denial of his motion to amend would cause him manifest injustice.

Eventually, the trial court held a hearing where it granted Johnson's motion for summary judgment as directed by the *Johnson* court and considered Johnson's pending motion for attorney fees and costs. The trial court granted Johnson's motion for trial court costs totaling $958.80. But it denied Johnson's motion for attorney fees totaling $52,254.76. It concluded that it could not grant Johnson's motion because on appeal, the *Johnson* court had "ruled on the merits" of his attorney fees request. It then adopted the Board's argument regarding the law of the case doctrine. Relying on the law of the case doctrine, it determined that because the *Johnson* court held that Johnson had failed to preserve his attorney fees argument for appeal, "[l]ogic dictate[d]" that he could not move for attorney fees upon remand.

6

In making this determination, the trial court stressed that the *Johnson* court's mandate "did not include directions to review the issue of attorney fees." As for the Board's argument that Johnson abandoned his ability to move for attorney fees because he had not requested such fees in the pretrial conference order, the trial court agreed with Johnson that generally, it could still amend the pretrial conference order to include his attorney fees request upon his showing of manifest injustice. But it denied Johnson's motion to amend the pretrial conference order because it found that the amendment was impermissible "under the circumstances in [his] case." And it noted that even though Johnson had relied on *Harder* while arguing that he could still move for attorney fees postjudgment, it found Johnson's reliance on the *Harder* decision unpersuasive because Johnson's case was factually distinguishable from the *Harder* decision.

Johnson timely appeals the trial court's denial of his motion for attorney fees.

ANALYSIS

*Did the trial court err when denying Johnson's motion for attorney fees upon remand?*

As he did before the trial court, Johnson argues that he could move for attorney fees upon remand and postjudgment. In making his argument, Johnson asserts that the trial court misinterpreted our mandate from *Johnson*. According to Johnson, the *Johnson* court's mandate did not address the merits of his argument about attorney fees. Johnson therefore contends that despite the trial court's ruling otherwise, the *Johnson* court's mandate did not bar him from moving for attorney fees upon remand. In making his argument, Johnson also continues to rely on *Bussman*, which he contends establishes that parties may move for attorney fees postjudgment. So Johnson asks us to reverse the trial court's denial of his motion for attorney fees and remand his case to the trial court with directions that it address the merits of his motion.

7

The Board, in contrast, argues that we should affirm the trial court's denial of Johnson's motion for attorney fees for two reasons. To begin with, the Board argues that Johnson has abandoned any argument that he may have had regarding his right to attorney fees by not addressing the trial court's alternative reason for denying his motion upon remand. According to the Board, when the trial court denied Johnson's motion, the trial court adopted its argument that Johnson could not move for attorney fees because its pretrial conference order did not include Johnson's request for attorney fees. After making this assertion, the Board notes that in his appellant's brief, Johnson never addresses the trial court's alternative reason for denying his motion. Based on this, the Board concludes that Johnson has abandoned any argument that he may have had about the validity of the trial court's alternative reason for denying his motion. Thus, the Board argues that we may simply affirm the trial court's alternative reason for denying Johnson's motion for attorney fees without reaching the merits of Johnson's complaints about the trial court's interpretation of the *Johnson* court's mandate.

Next, the Board asserts that regardless of the preceding, the trial court properly interpreted the *Johnson* court's mandate as barring it from considering Johnson's motion for attorney fees upon remand. In making its argument, the Board asserts that the *Johnson* court rejected Johnson's request for attorney fees "no less than six times." And it notes that the *Johnson* opinion included explicit remand directions to grant Johnson's summary judgment motion while including no directions involving Johnson's attorney fees request. It then points to the *Johnson* court's alternative ruling when rejecting Johnson's attorney fees request. It notes the *Johnson* court's alternative ruling that under the assumption that Johnson was not raising his argument for the first time on appeal, this court would nonetheless presume that the trial court found all facts necessary to reject Johnson's attorney fees request since Johnson never objected to the trial court's failure to rule on the attorney fees issue when denying his summary judgment motion. The Board contends that by making this alternative ruling, the *Johnson* court addressed the merits of Johnson's attorney fees request. So, the Board argues that at the very least, we should

8

affirm the trial court's denial of Johnson's motion because it correctly interpreted the *Johnson* court's mandate as barring it from considering any issues involving Johnson's right to attorney fees upon remand.

In his reply brief, Johnson takes issue with the Board's assertion that the trial court had an alternative reason for denying his motion for attorney fees. He contends that the trial court never adopted the Board's argument that he abandoned his ability to challenge the trial court's denial of his motion by not ensuring that the pretrial conference order included his attorney fees request. Instead, Johnson contends that the trial court simply denied his motion to amend the pretrial conference order because it believed that the *Johnson* court's mandate required this result even if he established the amendment's necessity upon a showing of manifest injustice. Hence, Johnson argues that he has not abandoned his ability to challenge the trial court's denial of his motion by failing to address the trial court's nonexistent alternative reason for denying his motion.

As considered below, Johnson's arguments about the trial court's denial of his motion for attorney fees are persuasive. In summary, a review of the applicable law in light of the *Johnson* court's mandate establishes that the trial court misinterpreted the *Johnson* opinion when denying Johnson's motion upon remand. Contrary to the trial court's interpretation, nothing within the *Johnson* opinion barred Johnson from moving for attorney fees upon remand. Also, Kansas law supports that Johnson could move for attorney fees postjudgment. For this reason, we reverse and remand to the trial court with directions that it consider and then rule on the merits of Johnson's motion for attorney fees.

*Johnson's challenge to the trial court's denial of his motion for attorney fees is properly before us.*

When appellees question whether appellants have properly preserved their arguments for appeal, appellees raise questions of law over which this court exercises unlimited review. See *State v. Campbell*, 308 Kan. 763, 770, 423 P.3d 539 (2018). To preserve their arguments for appeal, appellants must directly challenge the trial court's disputed decision in their appellant briefs. And it is a well-known rule of this court that appellants abandon any arguments about judicial decisions that they fail to raise in their appellant briefs. See *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018).

Here, the Board contends that Johnson abandoned his ability to challenge the trial court's denial of his motion for attorney fees because Johnson failed to address the trial court's alternative reason for denying his motion. Again, the Board asserts that in denying Johnson's motion, the trial court adopted its argument that Johnson's failure to ensure that the pretrial conference order included his attorney fees request forever barred Johnson from later moving for attorney fees. But as argued by Johnson, the Board's interpretation of the trial court's decision as having an alternative reason for denying his motion is incorrect. A fair reading of the trial court's decision shows that the trial court's entire basis for denying Johnson's motion hinged on its belief that the *Johnson* court's mandate prevented Johnson from moving for attorney fees upon remand.

In its written order denying Johnson's motion, the trial court started its analysis by finding "that [the] Court of Appeals had ruled on the merits of Johnson's request for attorney fees." And for this reason, it explained that it "could not modify what a higher court ha[d] resolved." After this, it further explained that while it "agree[d] with [Johnson's] argument that 'manifest injustice' [was] the proper standard" for amending pretrial conference orders, it could not consider Johnson's motion to amend the pretrial

10

conference order "under the circumstances in [Johnson's] case." Hence, in its written order, the trial court found that the circumstances of Johnson's case prevented it from considering his motion for attorney fees upon remand.

The only circumstances concerning Johnson's case that the trial court discussed in its written order, however, involved its belief that the *Johnson* court's mandate prevented it from considering Johnson's motion for attorney fees upon remand. Hence, the trial court's written order establishes that the court did not adopt the Board's argument that Johnson's failure to include his attorney fees request in the pretrial conference order forever barred Johnson from later moving for attorney fees. Instead, a review of the written order shows that the trial court denied both Johnson's motion for attorney fees *and* motion to amend the pretrial conference order to include his attorney fees request just because it believed that the *Johnson* court's mandate prevented it from even considering those motions.

What is more, before it entered its written order, the trial court orally denied Johnson's motion for attorney fees and motion to amend the pretrial conference order at the end of his motion hearing. In doing so, the trial court expressly stated that it believed the *Johnson* court's mandate, which it described as "harsh," prevented it from granting Johnson's motion to amend the pretrial conference order. And it recognized that ordinarily, it could still amend the pretrial conference order to include Johnson's attorney fees request upon Johnson's showing of manifest injustice. Nevertheless, the trial court stated that it could not grant Johnson's motion to amend because under its interpretation of the *Johnson* opinion, the *Johnson* court required him to move for attorney fees before it entered judgment on his summary judgment motion.

In short, both the trial court's written order and oral ruling plainly supports Johnson's assertion that the court's sole reason for denying his motion for attorney fees upon remand was its belief that the *Johnson* court's mandate required this result. And

11

given the trial court's written order and oral ruling, it is readily apparent that the court did not deny Johnson's motion based on his failure to ensure that his attorney fees request was in the pretrial conference order. In turn, the Board's assertion that Johnson abandoned his ability to challenge the trial court's denial of his motion is fatally flawed. Quite clearly, appellants cannot abandon their ability to challenge trial court decisions by failing to address rulings never made by the court.

       *The* Johnson *court's mandate did not bar Johnson from moving for attorney fees upon remand or postjudgment.*

       Like the abandonment issue just addressed, whether the trial court properly denied Johnson's motion for attorney fees upon remand under K.S.A. 2020 Supp. 58-4621 based on its interpretation of the *Johnson* court's mandate constitutes a question of law over which this court exercises unlimited review. See *In re Henson*, 58 Kan. App. 2d 167, 175, 464 P.3d 963 (2020) (holding that the application of the law of the case doctrine constitutes a question of law); *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019) (holding that statutory interpretation constitutes a question of law); *Sierra Club v. Mosier*, 305 Kan. 1090, 1105, 391 P.3d 667 (2017) (holding that both the trial court's compliance with an appellate court's mandate and the interpretation of an appellate court's mandate constitute questions of law); *Rinehart v. Morton Buildings, Inc.*, 297 Kan. 926, 942, 305 P.3d 622 (2013) (holding that the trial court's authority to award attorney fees constitutes a question of law).

       Here, K.S.A. 2020 Supp. 58-4621(a) controls whether Johnson was entitled to attorney fees under the Kansas Uniform Common Interest Owners Bill of Rights Act. In addition to stating that "[a] declarant, association, unit owner, or any other person subject to this act may bring an action to enforce a right granted or obligation imposed by this act, the declaration, or the bylaws," this provision states that "[t]he court may award reasonable attorney's fees and costs." K.S.A. 2020 Supp. 58-4621(a). Meanwhile, K.S.A.

2020 Supp. 58-4621(c) states that "[t]he remedies provided by this act shall be liberally administered to the end that the aggrieved party is put in as good a position as if the other party had fully performed." Yet, nothing within the plain language of K.S.A. 2020 Supp. 58-4621 addresses *when* parties moving for attorney fees must do so. It is also worth pointing out that unlike some jurisdictions, Kansas' rules of civil procedure contain no general rule about when prevailing parties must move for attorney fees. That is to say, under Kansas' rules of civil procedure, there is no rule requiring parties to move for attorney fees no later than so many days after the trial court enters judgment in their favor. See, e.g., Fed. R. Civ. Proc. 54(d)(2)(B)(i) (explaining that absent the application of a more specific statute, parties must move for attorney fees "no later than 14 days after the entry of judgment").

In *Bussman*, our Supreme Court considered whether Bussman's posttrial motion for attorney fees under K.S.A. 40-908—the provision allowing prevailing parties to seek attorney fees from violators of the Kansas Insurance Code—was timely. Below, the trial court had ruled that even though the jury had entered its verdict in Bussman's favor, Bussman was not entitled to attorney fees because her posttrial attorney fees motion was untimely. Particularly, it ruled that by including no language addressing when parties must move for attorney fees, the Legislature intended that parties moving for attorney fees under K.S.A. 40-908 do so before the trial court entered its final judgment. 298 Kan. at 719. Yet, ultimately, our Supreme Court rejected the trial court's ruling based on K.S.A. 40-908's plain language. 298 Kan. at 719-22.

In reaching its decision, the *Bussman* court noted that "Rossi on Attorneys' Fees state[d] that although the jurisdictions [were] not entirely uniform on [the] timing issue, 'the prevailing rule [was] that an application for attorneys' fees may be made after the entry of judgment.'" 298 Kan. at 721 (citing 1 Rossi, on Attorneys' Fees § 6:18, p. 6-67 [3d ed. 2013]). Overall, though, our Supreme Court's analysis turned on the well-known rule that when interpreting statutes, courts must try to ascertain our Legislature's intent

13

through the statute's plain language. 298 Kan. at 725. Relying on this rule, our Supreme Court held that contrary to the trial court's interpretation of K.S.A. 40-908, the lack of language in K.S.A. 40-908 addressing when parties must move for attorney fees supported that there was no fixed deadline when parties must move for attorney fees under K.S.A. 40-908. 298 Kan. at 721. For this same reason, our Supreme Court rejected Safeco's argument that Bussman's failure to include her attorney fees request in the trial court's pretrial conference order barred Bussman from moving for attorney fees posttrial. 298 Kan. at 721-22.

As to Safeco's complaint that Bussman's attorney fees request was not in the pretrial conference order, the *Bussman* court first ruled that Bussman's request for costs within the pretrial conference order constituted a request for attorney fees under the plain language of K.S.A. 40-908 and Kansas caselaw. 298 Kan. at 720. But after making this ruling, our Supreme Court explained that the "[m]ost persuasive" reason why Bussman's posttrial motion for attorney fees was timely was because K.S.A. 40-908's plain language gave all parties "fair and explicit notice" that prevailing parties were entitled to attorney fees under the Code. Given this, it concluded that Safeco "should not have required a pretrial order to understand that, if it lost the lawsuit . . . , it was facing a mandatory allowance to the plaintiff of reasonable attorney fees." 298 Kan. at 722.

So the *Bussman* decision stands for the proposition that if an attorney fees statute lacks a specific deadline requiring prevailing parties to move for attorney fees by a certain date but still gives all parties notice that prevailing parties are entitled to attorney fees, then prevailing parties may properly move for attorney fees postjudgment.

Similarly, the *Harder* decision is factually distinguishable from Johnson's case for several reasons. The *Harder* court rejected an argument that failing to include a request for attorney fees in a pretrial conference order barred the prevailing party from requesting attorney fees posttrial. In *Harder*, we explained that even if Foster—the contract

14

violator—sought to "sidestep" his contractual obligation to pay Harder's attorney fees, Foster could not do this. After noting that Harder included her attorney fees request in her pretrial questionnaire, we explained that the trial court's inadvertent failure to include Harder's attorney fees request in the pretrial conference order did not bar Harder from asking for attorney fees after the jury verdict in her favor. 54 Kan. App. 2d at 460. Also, the *Harder* court ruled that under the plain language of Harder and Foster's contract, as the prevailing party, Harder could move for attorney fees associated with Foster's posttrial attacks on the jury's verdict. 54 Kan. App. 2d at 454-56.

Returning to our statutory construction discussion, as for the rules on appellate court mandates, we note that K.S.A. 60-2106(c) states that a Kansas appellate court's mandate "shall be controlling in the conduct of any further proceedings necessary" before the trial court. Likewise, K.S.A. 20-108 states that Kansas trial courts must follow the "command[s]" of a Kansas appellate court's mandate. Citing K.S.A. 60-2106(c)'s and K.S.A. 20-108's plain language, our Supreme Court has held that trial courts are duty-bound to follow an appellate court's mandate under the mandate rule. *Building Erection Svcs. Co. v. Walton Construction Co.*, 312 Kan. 432, 441, 475 P.3d 1231 (2020). In fact, our Supreme Court has held that under both the mandate rule and the law of the case doctrine, which prohibits parties from relitigating the same issues within successive stages of the same lawsuit, "'[i]t is axiomatic that on remand for further proceedings [that] the trial court must proceed in accordance with the [appellate court's] mandate . . . .'" 312 Kan. at 440; see also *Venters v. Sellers*, 293 Kan. 87, 99, 261 P.3d 538 (2011) (discussing the application of the law of the case doctrine). Also, our Supreme Court has explained that appellate courts may depart from the law of the case doctrine when hearing successive appeals in exceptional circumstances. Nevertheless, the court has held that trial courts have no authority to depart from an appellate court's orders under the mandate rule. *Building Erection Svcs. Co.*, 312 Kan. at 440.

Of additional significance, when addressing how to interpret an appellate court's mandate, in *State v. Soto*, 310 Kan. 242, 256, 445 P.3d 1161 (2019), our Supreme Court declared the following:

> "The [mandate] rule applies to prevent district court action on remand only when an issue has already been finally settled by earlier proceedings in a case, including issuance of the appellate mandate. If a final settlement of an issue has occurred, the district judge is not free to expand upon or revise that history. The mandate rule does not, however, prevent a district judge from doing whatever else is necessary to dispose of a case. This means the district judge must not only do as the mandate directs; he or she must also do what is needed to settle other outstanding issues that must be decided to complete district court work on the case. Such issues may have been allocated for decision in the district court in the first place and then untouched by appellate proceedings."

Also, in *Provance v. Shawnee Mission Unified School District No. 512*, 235 Kan. 927, 933, 683 P.2d 902 (1984), our Supreme Court explained that when an appellate court's "decision and mandate is fully determinative of the issues presented in the proceedings below, they become a part of the judgment in the case without further order of the trial court." This is because there is no need to remand the case to the trial court with directions to take a certain action when the appellate court has fully decided the disputed issues in a case. It is only when an appellate court's "mandate does not fully determine the issues pending before the trial court that directions are necessary or appropriate to control the conduct of further proceedings to resolve any remaining issues." 235 Kan. at 933.

So under *Soto* and *Provance*, the mandate rule applies when an appellate court has not fully decided the issues before it and must therefore include directions to the trial court about what to do upon remand. That is why an appellate court mandate's silence on an issue does not constitute a direction. Under *Soto* and *Provance*, when an appellate court's mandate or opinion reverses one issue with directions but includes no directions as

16

to another issue it decided on appeal, the appellate court's lack of directions as to this other issue simply means that the appellate court has fully decided that other issue on appeal.

Returning to the parties' conflicting interpretations of the *Johnson* court's mandate, we once again note that as established in the preceding section, the trial court's sole reason for denying Johnson's motion for attorney fees upon remand was its belief that the *Johnson* court's mandate required it to do so. To that end, whether the trial court correctly denied Johnson's motion upon remand turns on whether the trial court correctly interpreted the *Johnson* court's mandate. And as addressed earlier, while Johnson argues that a review of the *Johnson* opinion and mandate under the applicable law shows that he could move for attorney fees upon remand because the *Johnson* court never addressed the merits of his attorney fees request, the Board counters that the *Johnson* court addressed the merits of Johnson's request. Relatedly, the Board never addresses the trial court's discussion of *Harder* when denying Johnson's motion. The Board, however, contends that Johnson's reliance on *Bussman* is misplaced because its rulings apply only to the specific attorney fees statute at issue in Bussman's case—K.S.A. 40-908.

But there are multiple problems with the Board's arguments.

For starters, it is important to point out that the actual mandate issued by this court's clerk after our Supreme Court denied Johnson's petition for review merely stated that the trial court was "COMMANDED . . . without delay" to execute this court's "judgment" in *Johnson* "according to law." In other words, the *Johnson* court's mandate commanded the trial court to execute its orders as stated in the *Johnson* opinion in accordance with the applicable law, which necessarily included the applicable law on interpreting appellate court mandates and awarding attorney fees. But our orders within the *Johnson* opinion when viewed in light of the applicable law on interpreting appellate

17

court mandates and awarding attorney fees shows that the *Johnson* court's mandate included no directions related to the merits of Johnson's attorney fees request.

To review, in *Johnson*, we ruled that based on the arguments before us, which included arguments about Johnson's right to appellate attorney fees, Johnson's right to attorney fees, and the Board's right to attorney fees, "[n]obody [was] [e]ntitled to [a]ttorney [f]ees." 2019 WL 7207550, at *13-14. Regarding Johnson's argument about attorney fees specifically, in its current appellee's brief, the Board has correctly pointed out that the *Johnson* court had primary and alternative rulings when denying Johnson's attorney fees request. The primary reason why we denied Johnson's request was because Johnson, by asking only for attorney fees in his petition, had failed to adequately raise the issue while before the trial court. Then, this meant that Johnson had effectively asked us for attorney fees for the first time on appeal contrary to our general rule prohibiting appellants from raising arguments for the first time on appeal. 2019 WL 7207550, at *14.

On the other hand, in *Johnson*, the alternative reason why we denied Johnson's attorney fees request involved Johnson's failure to object when the trial court denied his summary judgment motion without ever addressing his right to attorney fees. 2019 WL 7207550, at *14. Under this alternative ruling, we determined that "even if [it] assumed for argument's sake that the issue of Johnson's attorney fees was [raised] before the trial court," because Johnson never objected to the trial court's failure to rule on his attorney fees request when denying his summary judgment motion, we were required to "presume that the trial court found all necessary facts and rulings" to support the denial of Johnson's request. 2019 WL 7207550, at *14.

The Board contends that the *Johnson* court's alternative ruling addressed the merits of Johnson's attorney fees request. But the Board's contention is fundamentally flawed. It fails to understand that this was an *alternative ruling* that hinged on the *Johnson* court "*assum*[*ing*] for argument's sake that the issue of Johnson's [trial court]

18

attorney fees was [properly] before the trial court." (Emphasis added.) 2019 WL 7207550, at *14. The word "assume" means "to take for granted; suppose (something) to be a fact." Webster's New World College Dictionary 87 (5th ed. 2014). In short, when the *Johnson* court made its alternative ruling, it did not undermine its primary reason for denying Johnson's attorney fees request, that is, that Johnson was raising the issue for the first time on appeal. Instead, we merely ruled that even if we supposed as true that Johnson's request was properly before us, we would still reject Johnson's argument for a different reason. See *State v. Carr*, 300 Kan. 1, 330, 331 P.3d 544 (2014) (Moritz, J., concurring in part and dissenting in part) (explaining that an "alternative holding is dicta"), *rev'd and remanded on other grounds* 577 U.S. 108, 136 S. Ct. 633, 193 L. Ed. 2d 535 (2016).

Indeed, our Supreme Court, in *Law v. Law Co. Building Associates*, 295 Kan. 551, Syl. ¶ 1, 289 P.3d 1066 (2012), has held that dicta are not binding: "Dicta in a court opinion is not binding even on the court itself, because the court should consider the issue in light of the briefs and arguments of counsel when the question is squarely presented for decision." On that basis, the Board's reliance on our *Johnson* opinion's alternative ruling is misplaced.

Again, our primary reason for denying Johnson's request for attorney fees in *Johnson* was based on Johnson making his request for the first time on appeal. So it follows that our *Johnson* opinion did not address the merits of Johnson's request for attorney fees. Plainly, when this court rejects an argument as not properly preserved for appeal, this court does not reject that argument based on its merits. Instead, in such instances, this court has rejected the argument because the appellant has failed to follow the correct procedural rules allowing this court to consider the appellant's argument on appeal. Also, in *State v. Godfrey*, 301 Kan. 1041, 1042, 350 P.3d 1068 (2015)—one of our Supreme Court's principal cases on preservation issues—our Supreme Court "decline[d] to reach the merits of Godfrey's claim because he ha[d] failed to preserve it

for appellate review." Even though the trial court ruled that in *Johnson* we reached the merits of Johnson's attorney fees request, this is obviously incorrect.

Then, it also follows that the trial court erred when it adopted the Board's argument that the law of the case doctrine barred Johnson from moving for attorney fees upon remand. Again, under the law of the case doctrine, courts should generally not relitigate or reconsider issues that have been previously decided. *Venters*, 293 Kan. at 99. But here, because in *Johnson*, we never reached the merits of Johnson's attorney fees request, the law of the case doctrine was inapplicable.

Plus, the trial court's overall interpretation of our *Johnson* opinion ignored the basic rules regarding appellate court mandates. As just explained, the only issue that we addressed in *Johnson* was whether Johnson had preserved his argument to request attorney fees on appeal. So when we determined that Johnson had not properly preserved his argument for appeal, we simply held that we would not reach the merits of Johnson's argument because he failed to properly preserve the issue. In *Johnson*, we fully decided the preservation issue while also not reaching the merits of Johnson's attorney fees request. To this end, we held that Johnson had not preserved his argument. We did not include directions as to (1) whether Johnson could move for attorney fees upon remand or (2) whether Johnson's specific attorney fees request was reasonable. See *Provance*, 235 Kan. at 933.

Unfortunately, the trial court failed to understand that our *Johnson* opinion lacked directions regarding Johnson's attorney fees argument because we had fully decided the preservation issue against Johnson while also not reaching the merits of his request. Instead, the trial court interpreted our silence about Johnson's future ability to move for attorney fees and the reasonableness of his specific request as a direction that Johnson could not move for attorney fees upon remand. In short, the trial court's interpretation of our *Johnson* opinion is inconsistent with our Supreme Court precedent in *Soto* and

20

*Provance* establishing that appellate courts only reverse and remand with directions on issues that have not been fully decided on appeal. *Provance*, 235 Kan. at 933.

Besides, outside of the trial court's interpretation of our *Johnson* opinion, the trial court cited no law to support its denial of Johnson's motion. To the contrary, it merely noted that it disagreed with Johnson's reliance on *Harder* as evidence that he could move for attorney fees postjudgment because it found the *Harder* decision factually distinguishable from his case.

The trial court correctly found that Johnson's case was factually distinguishable from the *Harder* decision in many ways. The trial court, however, created a problem for itself when it determined that these factual distinctions should foreclose Johnson's ability to move for attorney fees upon remand.

For example, the trial court failed to address our Supreme Court's decision in *Bussman* in rejecting Johnson's argument for trial court-level attorney fees. *Bussman*, however, was one of the main authorities that Johnson relied on when arguing that he could validly move for attorney fees upon remand and postjudgment. In addition, the trial court's failure to address the *Bussman* decision was improper because the *Bussman* decision shows that the trial court should have considered the merits of Johnson's motion.

Again, after noting that Rossi on Attorneys' Fees reported that most jurisdictions allowed postjudgment motions for attorney fees, our Supreme Court held that the plain language of K.S.A. 40-908 allowed Bussman to move for attorney fees postjudgment. This was because K.S.A. 40-908's plain language did not include a deadline requiring prevailing parties to move for attorney fees by a certain date but did include "fair and explicit notice" that prevailing parties under the Kansas Insurance Code were entitled to attorney fees. *Bussman*, 298 Kan. at 721. So under the *Bussman* holding, when considering whether a party's postjudgment motion for attorney fees is timely, courts

should evaluate the plain language of the disputed attorney fees statute for two things: (1) whether the disputed attorney fees statute included a deadline requiring the prevailing party to move for attorney fees no later than a certain date and (2) whether the disputed attorney fees statute provided all parties fair and explicit notice that the prevailing party would be entitled to attorney fees. If the statute lacks a deadline requiring prevailing parties to move for attorney fees by a certain date but includes fair and explicit notice that prevailing parties are entitled to attorney fees, then parties may move for attorney fees postjudgment.

Here, the attorney fees statute at issue—K.S.A. 2020 Supp. 58-4621, like K.S.A. 40-908—does not include a deadline requiring prevailing parties to move for attorney fees by a certain date. But K.S.A. 2020 Supp. 58-4621 is distinguishable from K.S.A. 40-908 because unlike K.S.A. 40-908, K.S.A. 2020 Supp. 58-4621 does not state that prevailing parties "shall" be allowed reasonable attorney fees. Instead, K.S.A. 2020 Supp. 58-4621 simply states that the trial court "may" award prevailing parties attorney fees. All the same, K.S.A. 2020 Supp. 58-4621(a) clearly warns that the trial court "may award [the prevailing party] reasonable attorney's fees and costs" upon the prevailing party's motion for attorney fees. K.S.A. 2020 Supp. 58-4621 fairly and explicitly provides violators of the Kansas Uniform Common Interest Owners Bill of Rights Act notice that upon a prevailing party's motion for attorney fees, the trial court may award the prevailing party attorney fees.

Also, as stressed by Johnson in his appellant's brief, the fact that K.S.A. 2020 Supp. 58-4621(c) directs the trial court to "liberally administer[]" the provision to put "the aggrieved party . . . in as good a position as if the other party" had not violated the Kansas Uniform Common Interest Owners Bill of Rights Act constitutes further evidence that parties may move for attorney fees postjudgment. K.S.A. 2020 Supp. 58-4621 simply states that the trial court "may" award the prevailing party reasonable attorney fees. Under subsection (c), trial courts are directed to liberally administer the Act "to the end

22

that the aggrieved party is put in as good a position as if the other party" had not violated the Act. This language constitutes a clear warning to Act violators that absent extraordinary circumstances, the trial court will grant a prevailing party's motion for reasonable attorney fees. As a result, from the plain language of K.S.A. 2020 Supp. 58-4621, Act violators would have fair and explicit notice that except in rare instances, the trial court would grant the prevailing party's motion for reasonable attorney fees upon the prevailing party's motion.

To summarize, the plain language of K.S.A. 2020 Supp. 58-4621 lacks a deadline requiring prevailing parties to move for attorney fees by a certain date but includes fair and explicit notice that except in rare instances, the trial court could grant the prevailing party's motion for reasonable attorney fees upon the prevailing party's motion. The Board, like Safeco in *Bussman*, neither needed a prejudgment motion for attorney fees nor a direct request for attorney fees within the pretrial conference order to understand that if Johnson won his summary judgment motion, Johnson would be entitled to ask for attorney fees as the prevailing party. In turn, an interpretation of K.S.A. 2020 Supp. 58-4621 under *Bussman*'s precedent shows that nothing prevented Johnson from moving for attorney fees postjudgment following the case's remand from the *Johnson* holding.

Finally, the Board argues that Johnson's reliance on *Bussman* is misplaced because the *Bussman* decision hinged on K.S.A. 40-908's plain language stating that attorney fees were included "as part of the costs." The Board's interpretation of *Bussman*, however, is clearly wrong. Again, our Supreme Court ruled that Bussman timely moved for attorney fees because the pretrial conference order included her request for costs and costs constituted attorney fees under the plain language of K.S.A. 40-908. Nevertheless, its decision did not rest on this. 298 Kan. at 720-22. In fact, our Supreme Court overtly held that the "[m]ost persuasive" reason why Bussman could timely move for attorney fees postjudgment was "the realization that K.S.A. 40-908 [gave] all concerned fair and

23

explicit notice" that any prevailing party under the Kansas Insurance Code was entitled to attorney fees. 298 Kan. at 722.

So regardless of the Board's assertion otherwise, our Supreme Court's precedent in *Bussman* is not so narrow that it is limited to cases involving attorney fees requests under K.S.A. 40-908. Instead, as explained in the preceding paragraphs, the *Bussman* decision stands for the proposition that prevailing parties may move for attorney fees under an attorney fees statute postjudgment when that statute lacks a deadline requiring prevailing parties to move for attorney fees by a certain date but includes fair and explicit notice that prevailing parties are entitled to attorney fees.

In conclusion, the Board asserts that Johnson abandoned his ability to challenge the trial court's denial of his motion for attorney fees. The Board's assertion, however, hinges on its flawed interpretation of the trial court's order as including an alternative ruling in support of its decision. On that basis, the trial court never made an alternative ruling, meaning Johnson has preserved his argument that the trial court wrongly denied his motion upon remand based on its flawed interpretation of our mandate in *Johnson*. And a review of the *Johnson* court's opinion in light of the statutes controlling appellate court mandates and our Supreme Court's decision in *Provance* shows that our mandate in *Johnson* did not bar the trial court from considering Johnson's motion upon remand. Likewise, a review of K.S.A. 2020 Supp. 58-4621 in light of our Supreme Court's precedent in *Bussman* as well as our precedent in *Harder* establishes that Johnson could move for attorney fees postjudgment.

And so, nothing barred the trial court from reaching the merits of Johnson's motion for attorney fees upon remand from *Johnson*. In sum, we reverse the trial court's denial of Johnson's motion and remand with directions that the trial court consider and then rule on the merits of Johnson's motion for attorney fees.

*Is Johnson entitled to appellate attorney fees?*

After we assigned Johnson's case to the summary calendar docket, Johnson timely moved for appellate attorney fees. See Kansas Supreme Court Rule 7.07(b)(2) (2021 Kan. S. Ct. R. 51) (requiring parties in summary calendar cases to move for attorney fees on appeal no later than 14 days after their case was assigned to the summary calendar docket). In his motion for attorney fees on appeal, Johnson stresses that K.S.A. 2020 Supp. 58-4621(a) allows parties who successfully sue violators of the Kansas Uniform Common Interest Owners Bill of Rights Act to request and receive reasonable attorney fees. Then, he argues that this court should award him $1,891.50 in attorney fees for his attorneys' appellate work. Johnson reached this figure using the lodestar method for calculating attorney fees. But he further asserts that this figure is reasonable under Kansas Rule of Professional Conduct (KRPC) 1.5 (2021 Kan. S. Ct. R. 327).

Of note, the Board has not responded to Johnson's motion for attorney fees on appeal. Additionally, because more than seven days have passed since Johnson timely moved for appellate attorney fees, the Board has abandoned its ability to respond to Johnson's attorney fees request. See Kansas Supreme Court Rule 5.01(b) (2021 Kan. S. Ct. R. 31) (stating that a party has seven days to file a response to the opposing party's appellate motion).

In any case, when a party moves for attorney fees on appeal, Rule 7.07(b) controls this court's authority to grant the party's motion for attorney fees. Subsection (b)(1) provides that this court may award a party attorney fees for services that the party's attorney performed in "a case in which the district court had authority to award attorney fees." Rule 7.07 (2021 Kan. S. Ct. R. 52). Subsection (b)(2)(A)-(C) further provides that when a party moves for attorney fees on appeal, that party must attach an affidavit to the motion specifying "the nature and extent of the services rendered," "the time expended on the appeal," and "the factors considered in determining the reasonableness of the fee"

25

under KRPC 1.5—the rule governing reasonable attorney fees. Rule 7.07 (2021 Kan. S. Ct. R. 52). And KRPC 1.5(a) states that

"[t]he factors to be considered in determining the reasonableness of a fee include the following:

"(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

"(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

"(3) the fee customarily charged in the locality for similar legal services;

"(4) the amount involved and the results obtained;

"(5) the time limitations imposed by the client or by the circumstances;

"(6) the nature and length of the professional relationship with the client;

"(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

"(8) whether the fee is fixed or contingent." KRPC 1.5(a) (2021 Kan. S. Ct. R. 327).

Also, under the lodestar method of calculating attorney fees, a court must determine "the number of hours reasonably expended on the case as well as a reasonable hourly rate associated with the hours spent" before multiplying these two figures together to establish the lodestar. *Gigot v. Cities Service Oil Co.*, 241 Kan. 304, 316-17, 737 P.2d 18 (1987). Our Supreme Court has held that generally, Kansas courts do not "use only the lodestar method to calculate attorney fee awards under state statutes." *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 170-71, 298 P.3d 1120 (2013). Instead, the two lodestar factors—time worked and the party's attorney's hourly rate—are just two factors courts should consider when considering the reasonableness of a party's attorney fees request. 297 Kan. at 170-71.

As previously mentioned, whether a court has authority to award attorney fees constitutes a question of law over which this court exercises unlimited review. *Rinehart*,

26

297 Kan. at 942. Also, as previously discussed, K.S.A. 2020 Supp. 58-4621(a) gave the trial court the authority to award Johnson attorney fees because he successfully sued the Board under the Kansas Uniform Common Interest Owners Bill of Rights Act. So we have statutory authority to award Johnson appellate attorney fees under Rule 7.07(b)(1). In turn, the remaining issue that we must decide is whether Johnson's specific request for $1,891.50 in appellate attorney fees is reasonable. When considering such issues, "the amount of the award is within the sound discretion of the awarding court." *Snider*, 297 Kan. at 169.

Here, when Johnson moved for appellate attorney fees, he attached (1) the sworn affidavit of his primary attorney and (2) the invoice from his law firm detailing what he owed it for the hours his attorneys worked on his current appeal. In a sworn affidavit, Johnson's primary attorney outlined the hours that he and cocounsel spent working on Johnson's appeal and their hourly rates. And in the invoice, Johnson essentially confirmed his primary attorney's sworn affidavit claims. The invoice stated that Johnson's attorneys worked 12.7 hours on his current appeal at a total cost of $1,855.88. Also, the invoice explained what specific services Johnson's attorneys did and on what dates. In short, in moving for appellate attorney fees, Johnson addressed the nature and extent of the services his appellate attorneys rendered as well as the time his appellate attorneys expended upon the appeal as required under Rule 7.07(b)(2)(A)-(B).

At this point, it is important to note that there is a small discrepancy between the amount of appellate attorney fees that Johnson has requested in his motion and the figure that Johnson's attorneys charged him in his invoice. Johnson has requested $1,891.50 in appellate attorney fees while his invoice shows that his attorneys charged him $1,855.88 for their appellate work. A quick review of Johnson's motion in comparison with Johnson's invoice indicates that Johnson's primary attorney simply made an arithmetic mistake. In Johnson's motion, his primary attorney alleged that he had worked 10.7 hours on Johnson's current appeal while Johnson's invoice shows that his primary attorney

27

worked just 10 hours on Johnson's current appeal. Then, at most, Johnson would be limited to $1,855.88 in attorney fees as supported by his invoice.

Notwithstanding this minor discrepancy, Johnson's attorney fees request also complies with Rule 7.07(b)(2)(C) because through his motion and attachments, he has addressed each of the KRPC 1.5(a) factors for determining the reasonableness of a party's attorney fees request. More importantly, in discussing the KRPC 1.5(a) factors, Johnson establishes the reasonableness of his appellate attorney fees request.

By attaching his invoice to his motion, Johnson addressed how much time and labor his attorneys performed for his current appeal as required under KRPC 1.5(a)(1). In his affidavit, Johnson's primary attorney addressed the novelty and difficulty of the issue involved in Johnson's appeal—another requirement of KRPC 1.5(a)—by conceding that his current appeal involved a relatively simple issue. And in this affidavit, Johnson's primary attorney addressed the impact that taking Johnson's case had on obtaining other clients as required under KRPC 1.5(a)(2); he conceded that Johnson's appeal had minimal impact in this way. He also addressed what the customary attorney fees were in the region as required under KRPC 1.5(a)(3) by noting that he and cocounsel charged Johnson less than what other attorneys in the region would have for similar legal services. And in doing this, he further addressed the experience, reputation, and ability of himself and cocounsel as required under KRPC 1.5(a)(7).

Similarly, in his sworn affidavit, Johnson's primary attorney noted that the amount of money in dispute as meant under KRPC 1.5(a)(4) was limited to the parties' respective attorney fees requests. He conceded that there were not any unusual time limitations as meant under KRPC 1.5(a)(5) that entitled him and cocounsel to more attorney fees than their typical hourly rate. He noted that Johnson had been his firm's client since July 2016 as required under KRPC 1.5(a)(6). And as required under KRPC 1.5(a)(8), he noted that he and cocounsel charged Johnson at a fixed hourly rate.

In summary, through his motion for appellate attorney fees, Johnson addresses all of the KRPC 1.5(a) factors regarding the reasonableness of his appellate attorney fees request. Outside of the minor arithmetic mistake that Johnson's primary attorney made in calculating Johnson's appellate attorney fees request, Johnson's invoice supports his specific attorney fees request. Hence, because of the evidence before us, we grant Johnson's appellate attorney fees request in the amount of $1,855.88 as established by his invoice.

Reversed and remanded with directions that the trial court consider the merits of Johnson's motion for trial court attorney fees.